**The STATE OF OHIO, Appellee,**

**v.**

**PAYTON, Appellant.**

[Cite as *State v. Payton* (1997), 119 Ohio App.3d 694.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 93–P–0121.

Decided May 19, 1997.

696

*Sharon A. Sabarese,* Special Prosecutor, for appellee.

*Darren L. Meade,* for appellant.

NADER, Judge.

This is an appeal by defendant-appellant, Mark S. Payton,[1] challenging his conviction on one count of forcible rape, an aggravated felony of the first degree, carrying a mandatory life sentence, pursuant to R.C. 2907.02(A)(1)(b) and (B).

Appellant became acquainted with Robert Julian and his wife, Rebecca, when he lived in Kent, Ohio, in 1992. Mr. and Mrs. Julian have three children: the victim, Amanda, born in 1988; Amber, born in 1989; and Chad, born in 1993. After living in West Virginia for several months in 1993, appellant returned to Kent on June 13, 1993, and stayed with the Julians until June 16, at their two-bedroom apartment in the Silver Meadows apartment complex.

When appellant arrived at the Julians' apartment, he and Mr. Julian began drinking beer; Mr. Julian testified that the two of them consumed between three and four six-packs of Busch beer that evening. At approximately 8:30 or 9:00 that night, Amanda and Amber fell asleep on one couch in the living room while Mr. and Mrs. Julian and appellant were watching television. At 11:00 p.m., Mr. and Mrs. Julian retired to their bedroom to sleep; appellant apparently passed out on the other couch in the living room where the girls were sleeping.

---

1. At various places in the record appellant is referred to as "Mark S. Peyton."

It is alleged that, sometime in the middle of the night of June 13, 1993, appellant approached Amanda, then four years old, and pulled down her pajama bottoms and panties. The testimony was unclear whether appellant picked up Amanda and moved her to the other couch or whether he left her on the couch on which she slept. Appellant then spread Amanda's legs and licked and kissed her vaginal area. Amanda was awake while appellant committed these acts, and, when he was finished, she pulled up her pajama bottoms and panties. She then fell asleep.

The next morning, Monday, June 14, 1993, after Mr. Julian and appellant left the apartment for work, Amanda went into her mother's bedroom and told her, "Marky [appellant] kissed my pee-pee and licked it." Upon hearing this, Mrs. Julian began crying, although she did not report the assault to anyone. Mrs. Julian told Amanda that she would have to tell her father what appellant had done; however, neither Mrs. Julian nor Amanda told Mr. Julian on June 14 or June 15, 1993. After work on June 14, Mr. Julian and appellant stopped at a bar for drinks. Mrs. Julian did not drink alcoholic beverages, and she did not like appellant because, when he was around, Mr. Julian would drink heavily.

Mrs. Julian testified that Amanda did not want to go near appellant and that she urged her husband to take appellant home on numerous occasions. Mrs. Julian also testified that on the night of Tuesday, June 14, she overhead Amanda tell appellant that she had told her mother what he had done. In response, appellant allegedly told Amanda she should not tell because she would get in trouble.

On the morning of Wednesday, June 16, 1993, appellant and his girlfriend, Tina Ketterman, took Amanda and Amber to the park, where they watched and played with the two girls, while Mr. and Mrs. Julian were still asleep. After their return from the park and upon her mother's urging, Amanda told her father what appellant had done. Mr. Julian then told appellant he should leave and drove appellant and Ketterman to the hotel in which she lived and worked. On the drive to the hotel, appellant claimed he did not remember touching Amanda, and, when asked, stated that he was sorry and that he did not know why he had touched her. He also stated that he must have done it because Amanda would not lie about something like this.

The Julians did not report the incident to the police until Thursday afternoon, June 17, 1993, when they went to the Kent Police Department. Detective Rebecca Weiss testified that, based on her interview with Amanda, she filed a complaint against appellant charging him with one count of forcible rape. A warrant was issued for appellant's arrest, which was forwarded to the Boston Heights Police Department.

Appellant was arrested on the night of June 17, 1996, by Officer Raymond Heatwall of the Boston Heights Police Department. Officer Heatwall testified that in the patrol car on the way to the Kent Police Department, appellant stated that "Amanda had stated he had done some bad things to her and that is why he was upset" and also made statements such as "when I'm drunk, I do weird shit, but not all the time." The record is unclear whether these statements were in response to Officer Heatwall's questions or whether appellant volunteered the information. In response to Officer Heatwall's question regarding whether Amanda may have invented the story, appellant stated, "Yes, I may have done this * * * just because she said I did." Officer Heatwall testified that appellant appeared to be "intoxicated, stressed and very emotional."

When he arrived at the Kent Police Department, appellant waived his *Miranda* rights after explanation by Detective Weiss. When Detective Weiss inquired about the statement made to Officer Heatwall that he did "weird shit" when he drank, appellant responded that he had climbed in bed with his thirty-eight-year-old sister-in-law and he had urinated outside on previous occasions when he was drunk. Detective Weiss testified that appellant stated he did not remember anything from the time he passed out on the couch on the night of June 13, 1993, to the time he woke up to go to work the next morning. During the questioning, appellant twice asserted that it was not possible that he had committed these acts, but was unable to remember.

The grand jury returned a true bill on the charge of forcible rape on June 25, 1993. On June 30, 1993, the prosecution filed a motion to videotape Amanda's testimony pursuant to R.C. 2907.41. After conducting a hearing on July 26, 1993 on the issue of videotaping Amanda's testimony, the trial court granted the prosecution's motion by judgment entry dated August 2, 1993.[2] Amanda's testimony was taken on September 20, 1993, pursuant to R.C. 2907.41. Appellant's attorney assented to the prosecution's motion to admit the videotape into evidence.

A jury trial was held on December 15, 1993. After opening statements, the prosecution showed Amanda's videotaped testimony, without objection by defense counsel.[3] At the outset of her testimony, the judge and the prosecution attempted to qualify Amanda to testify by asking questions regarding her ability to perceive reality, her ability to relate what she experienced, and her ability to understand the concept of truth. This *voir dire* was very brief, at the end of

---

2. No transcript of the July 26, 1993 hearing was filed with the clerk of courts.

3. In fact, when the trial court asked defense counsel if he had any objection to playing the videotape or entering it into evidence, defense counsel stated, "We have no objection to playing it, we have no objection to it being admitted into evidence as an Exhibit."

which the court said, "Go ahead and give it a try." Although she had difficulty understanding and answering some questions, Amanda was permitted to testify as to the events in question.

Detective Weiss and Officer Heatwall testified about their investigation of the case and their interrogation of appellant. Mr. and Mrs. Julian testified for the prosecution, while Tina Ketterman testified in appellant's behalf. Appellant did not testify.

After closing arguments, the court instructed the jury on the charge of forcible rape. After less than three hours of deliberation, the jury returned a guilty verdict on the forcible rape charge.[4] The judge then sentenced appellant to life in prison as required by R.C. 2907.02(B). Appellant timely appealed, asserting four assignments of error [5]:

"1.  The Appellant was denied effective assistance of counsel."

"2.  The verdict of the jury finding that the Appellant had purposely compelled the victim to submit by force or the threat of force was not supported by the evidence at trial."

"3.  The trial court erred in admitting into evidence the video taped deposition of the four year old victim and failing to first find her competent to testify."

"4.  The jury's verdict is against the manifest weight of the evidence."

### A.  Sufficiency of the Evidence

We first turn to appellant's second assignment of error, in which appellant challenges the sufficiency of the prosecution's evidence of force required by R.C. 2907.02 to support the life sentence imposed upon him. Specifically, appellant contends that the prosecution did not present *any* evidence of force in this case.

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to "review the record to determine whether there was sufficient evidence for the jury to find defendant guilty beyond a reasonable doubt." *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus. A challenge to sufficiency attacks the prosecution's presentation of evidence on each element of the offense to allow the question of guilt to be submitted to the jury. *State v. Schlee* (Dec. 23, 1994), Lake App. No. 93–L–082, unreported, at 10, 1994 WL 738452.

---

**4.**  The entire trial, from voir dire to verdict, took less than one day.

**5.**  It has taken the parties approximately three years to file their briefs due to numerous substitutions of counsel on both sides and delay in obtaining a transcript of Amanda's videotaped testimony. During all of this time, appellant has remained confined in the Lorain Correctional Institution.

"The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence." *State v. Davis* (1988), 49 Ohio App.3d 109, 113, 550 N.E.2d 966, 969, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573–574.

The evidence is to be viewed in a light most favorable to the prosecution. *Id.*

R.C. 2907.02 provides:

"(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * *. * when any of the following applies:

"* * *

"(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

"* * *

"(B) Whoever violates this section is guilty of rape, an aggravated felony of the first degree. If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life.

"(C) A victim need not prove physical resistance to the offender in prosecutions under this section."

The plain language of the statute allows for a conviction for rape of a minor under the age of thirteen without proof of force. Thus, force is not an element of the crime of rape under R.C. 2907.02(A)(1)(b). *State v. Sullivan* (Oct. 7, 1993), Cuyahoga App. No. 63818, unreported, at 8–9, 1993 WL 398551, citing *State v. Astley* (1987), 36 Ohio App.3d 247, 523 N.E.2d 322. Proof of force under these circumstances is necessary only to support a life sentence. *Id.* Even so, a defendant may challenge the sufficiency of the prosecution's evidence not only on each element of the crime charged, but also on the sentence-enhancing provisions. See, generally, *State v. Gaines* (1989), 46 Ohio St.3d 65, 545 N.E.2d 68.

"Force" is defined by R.C. 2901.01(A) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." The Supreme Court of Ohio elaborated upon this definition, especially with respect to children, in *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, at paragraph one of the syllabus:

"The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same. degree of force and

violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength."

In *Eskridge*, the court reviewed the sufficiency of the evidence of force in a case in which the victim was the four-year-old daughter of the defendant. The prosecution presented the child's testimony that the defendant took off her panties and laid her on the bed before he assaulted her. The court also noted the age disparity: the defendant was twenty-eight and the victim was four. The court found this evidence sufficient to support the jury's finding of force stating:

"The victim testified that Eskridge *removed her panties* and there was testimony that he *laid her on the bed—both acts of compulsion and constraint that are independent of the act of rape.* * * * A four-year-old child cannot consent to sexual conduct. The victim here did not and could not have participated in the sexual conduct of her own free will." (Emphasis added.) *Id.* at 58, 526 N.E.2d at 306.

The *Eskridge* court found the most important factor in this determination to be the relationship between the defendant and the victim—the parent-child relationship, stating, "[W]e are confronted with a child being told to do something by an important figure of authority * * *. [W]e find nothing unreasonable about a finding that the child's will was overcome." *Id.* at 59, 526 N.E.2d at 306. In sum, because of the nature of the relationship, when the perpetrator's relationship to the accused is parent-child, force can be found "on the slightest of physical or verbal acts, such as removing the child's clothes, ordering the child to permit sexual activity, or instructing the child to keep it secret." *State v. Dye* (Mar. 12, 1997), Summit App. No. 17763, unreported, at 11, 1997 WL 119563.

The relaxed standard for showing force presented in *Eskridge* has also been applied to relationships other than parent-child. *State v. Riffle* (1996), 110 Ohio App.3d 554, 674 N.E.2d 1214 (force found when live-in boyfriend of mother ordered victim to take her clothes off and get in bed and when victim tried to squirm away); *State v. Gordon* (Apr. 6, 1994), Greene App. No. 92 CA 127, unreported, 1994 WL 116171 (force found when stepparent residing in the same home held eleven-year-old, developmentally handicapped victim's head down while requiring him to perform fellatio); *State v. Cornell* (Nov. 27, 1991), Cuyahoga App. No. 59365, unreported, 1991 WL 251667 (force found when landlord picked up nine-year-old victim, laid him on a bed, asked victim to take off his clothes, and performed fellatio).

We have held, however, that the relaxed standard announced in *Eskridge* should be limited to relationships involving the parent, stepparent or adoptive parent of the victim. *State v. Waites* (Aug. 19, 1994), Lake App. No. 93–L–009, unreported, at 12, 1994 WL 590289. Accordingly, when faced with a

relationship other than a parent-child or a like relationship, more should be required to find force than with the parent-child relationship, due to the absence of implicit threat of punishment for disobedience. This case does not present a parent-child relationship. Rather, the accused is a close friend of the victim's father. At the time of the alleged incident appellant had been out of contact with the Julian family for about six months; the incident took place on the first night appellant returned to Kent. Consequently, we cannot say appellant held a position of authority over Amanda, as would a stepparent or one in a similar relationship.

The prosecution presented Amanda's testimony that appellant, an adult, picked her up and took her to another couch, took off her pajama bottoms and panties and performed cunnilingus. Although these acts might be sufficient for a finding of force when a parent is involved, they are not sufficient in this case. No other evidence was presented that might have indicated the use or threatened use of force by appellant. There was no evidence that appellant ever threatened to harm or otherwise coerced Amanda. Amanda testified that appellant merely removed her clothes and performed the act. These acts are not sufficient to support a finding of force to support the life sentence imposed upon appellant. Accordingly, appellant's second assignment of error has merit.

### B. Ineffective Assistance of Trial Counsel

For his first assignment of error, appellant raises the ineffectiveness of his trial counsel as grounds for reversal in this case. Specifically, appellant's claim of ineffective assistance is based upon defense counsel's failure to file a motion to suppress or otherwise object to the admission of the statements he made to Officer Heatwall and Detective Weiss, to request an instruction on the lesser included offense of gross sexual imposition, and to object to the admission of Amanda's videotaped testimony without requiring the court to make the required finding of competence and serious emotional trauma. We will begin by addressing appellant's third argument in support of his claim of ineffectiveness—the admission of Amanda's testimony without objection.

To warrant reversal on the grounds that he was not provided the effective assistance of counsel, appellant bears the burden to meet the two-pronged test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, which requires a showing of both deficient performance and prejudice.

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. See, also, *State v. Lytle* (1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 497–498, 358 N.E.2d 623, 626–627 (adopting virtually the same test for Ohio).

To determine whether counsel's performance was deficient, the court must inquire whether the attorney provided reasonably effective assistance, considering all the circumstances. *State v. Loza* (1994), 71 Ohio St.3d 61, 83, 641 N.E.2d 1082, 1105–1106, citing *Strickland.* Appellant must show that counsel's performance fell below an objective standard of reasonableness. *Id.* In this regard, a properly licensed attorney is presumed to be competent; thus, judicial scrutiny of an attorney's performance must be highly deferential. *Strickland* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–695; *State v. Seiber* (1990), 56 Ohio St.3d 4, 11, 564 N.E.2d 408, 417–418. Counsel's strategic decisions and trial tactics will not support a claim of ineffective assistance. *State v. Clayton* (1980), 62 Ohio St.2d 45, 48–49, 16 O.O.3d 35, 37–38, 402 N.E.2d 1189, 1191–1192.

Under the second prong of the *Strickland–Lytle* test, the appellant must also show prejudice.

"To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.

A reviewing court, in analyzing an ineffectiveness claim, must view the evidence presented to the jury in toto. *Id.* at 142, 538 N.E.2d at 379–380, citing *Strickland.*

Although a defendant's constitutional right to effective assistance does not require defense counsel to file a motion to suppress in every case, *State v. Flors* (1987), 38 Ohio App.3d 133, 139, 528 N.E.2d 950, 956–957, where there exist reasonable grounds for filing a motion to suppress, counsel's failure to file the motion may constitute ineffective assistance and warrant reversal. *State v. Garrett* (1991), 76 Ohio App.3d 57, 63, 600 N.E.2d 1130, 1134; *State v. Justice* (Dec. 24, 1996), Franklin App. No. 96APA05–616, unreported, at 12, 1996 WL 737552. See, also, *State v. Gibson* (1980), 69 Ohio App.2d 91, 95, 23 O.O.3d 130, 132, 430 N.E.2d 954, 957 (holding that "where there exists no grounds for the

suppression of evidence, a defense attorney has no duty to file a motion to suppress evidence."). However, this court has held:

"[T]he *possibility* that [a motion to suppress] would have been [granted] warranted its filing by appellant's counsel.

"By not filing a suppression motion, appellant's trial counsel substantially violated an essential duty owed to appellant." (Emphasis added.) *Garrett,* 76 Ohio App.3d at 63, 600 N.E.2d at 1134.

Finally, the *Justice* court stated, "[F]ailure to file or pursue a motion to suppress, which *could possibly have been granted* and which implicated matters critical to the defense, constituted ineffective assistance of counsel." (Emphasis added.) *Justice, supra,* at 12, citing *State v. Freeman* (Dec. 12, 1995), Franklin App. No. 95APA03–321, unreported, 1995 WL 739980. Therefore, we must determine whether appellant's motion to suppress Amanda's testimony, had it been filed, could *possibly* have been granted on the grounds of incompetence or susceptibility to "serious emotional trauma." *Garrett; Justice, supra.* If so, appellant's attorney had a duty to file the motion.[6]

### 1. Competence

Evid.R. 601(A) provides the applicable test for determining whether an individual is competent to testify:

"Every person is competent to be a witness except: (A) * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."

Similarly, R.C. 2317.01 provides:

"All persons are competent witnesses except * * * children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."

▮ Therefore, children under age ten are rebuttably presumed to be incompetent to testify. *State v. Wilson* (1952), 156 Ohio St. 525, 530, 46 O.O. 437, 439, 103 N.E.2d 552, 555–556; *State v. Morgan* (1986), 31 Ohio App.3d 152, 153, 31 OBR 241, 242–243, 509 N.E.2d 428, 429–430. The state bears the burden to overcome the presumption that a child under ten is not competent to testify by presenting proof that the child is (1) capable of receiving just impressions of relevant facts and (2) capable of relating her impressions truly. *State v. Arnold* (Oct. 1, 1992), Greene App. No. 91 CA 43, unreported, at 4–5, 1992 WL 245542, citing *Wilson* and *Morgan.*

---

6. In addressing the issue of the admissibility of Amanda's testimony under appellant's first assignment of error, we also address appellant's third assignment of error.

■ The trial court must conduct voir dire to determine, in its discretion, whether the child is competent to testify. *State v. Frazier* (1991), 61 Ohio St.3d 247, 250–251, 574 N.E.2d 483, 486–487; *Wilson*, 156 Ohio St. at 530, 46 O.O. at 439, 103 N.E.2d at 555–556; *State v. Lee* (1983), 9 Ohio App.3d 282, 283, 9 OBR 497, 497–499, 459 N.E.2d 910, 911–912. The child's appearance, demeanor, manner of answering questions posed, and the presence or absence of indications of coaching are factors the trial court should consider in determining a child's competence to testify. *Wilson*, 156 Ohio St. at 532, 46 O.O. at 440, 103 N.E.2d at 556.

During the first moments of Amanda's videotaped deposition, taken on September 20, 1993, the court questioned Amanda in an attempt to qualify her to testify; the transcript of the entire voir dire is three pages in length. During this brief examination, Amanda was unable to testify as to her age without the judge's assistance, although during her direct examination she was able to testify that she had a brother and a sister, and that appellant was her father's friend. When asked, "Do you know what happens if you don't tell the truth," Amanda responded, "He licked it." Nonetheless, Amanda did testify that she knew it was good to tell the truth, promising not to "tell stories." The remaining questions posed from the bench concerned whether Amanda watched cartoons.

No transcript or agreed statement of the July 26, 1993 hearing to determine admissibility of Amanda's testimony by videotape is in the record before us; hence, we cannot determine whether the trial court also examined Amanda, at that hearing, to determine her competency to testify.

Generally, an appellant bears the burden of showing error by reference to matters in the record. *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 219–220, 400 N.E.2d 384, 385–386; App.R. 9(A). If an appellee considers the record to be inadequate, in that it does not contain a "transcript of other parts of the proceedings necessary" to a complete determination of the issues on appeal, it becomes his duty to supplement the record with that information. App.R. 9(B).

■ The record here contains only the court's brief voir dire at the beginning of Amanda's videotaped testimony. This examination was wholly inadequate to meet the prosecution's burden to overcome the presumption of incompetence. *Wilson*, 156 Ohio St. at 530, 46 O.O. at 439, 103 N.E.2d at 555–556; *Morgan*, 31 Ohio App.3d at 153, 31 OBR at 242–243, 509 N.E.2d at 429–430. Therefore, appellant has met his burden to show error on the record. If another, more thorough, voir dire took place in the July 26, 1993 proceeding, it became appellee's duty to ensure that the record was supplemented pursuant to App.R. 9(B).

From the record before us, we conclude that, had defense counsel objected to the admission of Amanda's testimony on competency grounds at the close of the trial court's brief voir dire, there was a strong possibility that the objection or motion would have been sustained. Therefore, counsel had a duty to file a motion to suppress or to otherwise object to the admission of Amanda's testimony. Not only did counsel fail to object, but, when asked by the court if he had any objections to this testimony, defense counsel welcomed the evidence.

### 2. Serious Emotional Trauma

In cases in which a defendant is charged with a violation of R.C. 2907.02, the victim will be permitted to testify by videotaped deposition provided three criteria are met: (1) the victim was a child under age eleven when the complaint was filed, (2) the defendant had the opportunity and similar motive at the taking of the deposition to develop the testimony, and (3) the judge determines that there is reasonable cause to believe that the child victim will suffer "serious emotional trauma" if required to testify in person at the trial. R.C. 2907.41(A)(1) and (B)(1). The statute contemplates that the court will hold a hearing after the deposition is taken and before the trial, but departure from this sequence is not error. *State v. Self* (1990), 56 Ohio St.3d 73, 76, 564 N.E.2d 446, 450, fn. 2 (holding that R.C. 2907.41 does not violate the United States or Ohio Constitution's provisions entitling a defendant to confront witnesses against him).

R.C. 2907.41(F)(2) requires the judge to enter his determination and findings regarding the admissibility of videotaped deposition testimony "on the record in the proceeding." Thus, according to the plain language of the statute, the trial court may make its R.C. 2907.41 findings during the proceedings, and the judgment entry granting the prosecution's motion is not required to, but may, contain those findings.

In this case, the judge conducted the hearing on this issue on July 26, 1993, upon motion of the prosecution. No transcript of this proceeding was filed. On August 2, 1993, the court filed a judgment entry granting the state's motion to take Amanda's deposition testimony without making any written findings regarding Amanda's susceptibility to serious emotional trauma if required to testify during the trial.

Again, the record before us contains no findings by the trial court of serious emotional trauma due to absence of documentation of the July 26, 1993 hearing. Moreover, we find no evidence that Amanda, in fact, would suffer serious trauma from testifying in person, nor is there evidence to support an assertion that Amanda suffered serious emotional trauma from this alleged incident. She did not appear to be afraid of appellant immediately after the event or at trial. In fact, Amanda accompanied appellant and Ketterman to the park a few days after

the alleged incident. Consequently, there exists a reasonable possibility that a motion to suppress or other objection would have been sustained. Therefore, defense counsel had a duty to file the motion or make the objection to Amanda's testimony.[7]

### 3. Prejudice

We must next determine whether there also exists a reasonable probability that, had Amanda's testimony been excluded, the result of the trial would have been different. *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus. We conclude that Amanda's testimony was critical to the prosecution's case, and, without it, the likelihood of a different outcome is substantial. Without Amanda's testimony, the prosecution would have been left with the testimony of Officer Heatwall, Detective Weiss, and Mr. and Mrs. Julian, as there was no physical evidence establishing the existence of or appellant's connection to this crime.

Officer Heatwall and Detective Weiss testified that appellant stated he did not remember touching Amanda that night. Even though appellant stated he did "weird shit" when he got drunk, his statements to the police officers and detectives did not constitute an admission of committing this crime. He explained that he had climbed in bed with his sister-in-law and urinated outside on other occasions when he was drunk. Officer Heatwall also testified that appellant, while "intoxicated, stressed and very emotional," stated he must have touched Amanda if she said he did. However, appellant consistently claimed that he did not remember touching Amanda and that there was no possibility that he committed this crime without remembering doing so. Without Amanda's testimony that appellant "kissed and licked" her vaginal area, Officer Heatwall's and Detective Weiss's testimony loses its impact.

The testimony of Mr. and Mrs. Julian also added little to the prosecution's case. Mrs. Julian was permitted to testify that Amanda told her appellant "kissed her pee-pee and licked it." Without Amanda's in-court testimony, this statement may have been inadmissible. Mrs. Julian also testified that she waited over two days to report this incident to her husband, during which time appellant continued to reside with the Julian family in their small, two-bedroom apartment. She testified that she left Amanda and Amber alone with appellant on several occasions after knowing about the incident.

The main thrust of Mr. Julian's testimony was that appellant did not deny that he had touched Amanda; he told Mr. Julian he did not remember touching

---

7. In concluding that Amanda's testimony was inadmissible, we determine that appellant's third assignment of error has merit.

Amanda but stated that she would not lie about something like this. Again, without Amanda's testimony, these statements have little meaning.

In short, without Amanda's testimony, the prosecution's case would be based on the hearsay testimony of Mr. and Mrs. Julian. Moreover, Mrs. Julian disliked appellant and wanted him out of their lives because of the effect he had on Mr. Julian. The absence of Amanda's testimony would strike a substantial blow to the prosecution's case. Therefore, appellant's trial counsel had a duty to object to its admission either through suppression motion or through oral objection. In addition, there exists more than a reasonable probability that the outcome of the case would have been different if it were not for defense counsel's error.

■ Furthermore, the admissibility of the testimony of Officer Heatwall and Detective Weiss is questionable. It appears as though appellant's statements to Officer Heatwall were made in violation of his *Miranda* rights, as appellant was in custody (in the police cruiser) and under the influence of alcohol when he made some incriminating statements; Officer Heatwall testified that appellant appeared "intoxicated, stressed and very emotional." These factors also raise the question of the voluntariness of appellant's statements. Additionally, there is an issue of whether appellant's statements to Detective Weiss were made while he was still under the influence of alcohol although he was properly *Mirandized,* which raises a serious question regarding the validity of appellant's waiver of his rights. Thus, defense counsel had a duty to raise an objection to this testimony as well. His failure to object to this testimony substantially prejudiced appellant's right to a fair trial especially because the state would have the burden at a suppression hearing to prove that the defendant had waived his Fifth Amendment rights. *Colorado v. Connelly* (1986), 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473, 485. Appellant was thus denied his right to effective assistance of counsel.

Accordingly, appellant's first assignment of error has merit.

## C. Manifest Weight of the Evidence

For his fourth assignment of error, appellant attacks the jury's verdict as against the manifest weight of the evidence.

Viewing the totality of the evidence, which was marginal at best, we find that it is debatable how the jury could find appellant guilty of forcible rape beyond a reasonable doubt. The jury convicted appellant based on the questionable testimony of a four-year-old child and her obviously biased mother and testimony of her father and police officers, which only added weak inferences of admissions by appellant.

Nonetheless, because we have found merit with appellant's first three assignments of error, appellant's fourth assignment of error is rendered moot and will not be further considered.

In accordance with the foregoing analysis, we reverse the judgment entered on the verdict, enter judgment in favor of appellant on the issue of force, and remand this cause for a new trial.

*Judgment reversed*
*and cause remanded.*

FORD, P.J., and CHRISTLEY, J., concur.