OPINION
{¶ 1} Appellant, James M. Parks, was convicted of rape with force and an age specification, in violation of R.C. §2907.02(A)(1)(b), a first degree felony, following his jury trial in the Columbiana County Court of Common Pleas. Appellant was deemed a sexual predator and was sentenced to life imprisonment by Judgment Entry dated March 4, 2004.
 {¶ 2} Following this guilty verdict in Columbiana County, Appellant pleaded guilty to six separate first degree felony counts of rape in Carroll County, Ohio. Appellant was also deemed a sexual predator and was sentenced to two consecutive life sentences on March 4, 2004.
 {¶ 3} Appellant timely appealed both entries. Appellant's Columbiana County appeal is numbered 04 CO 19; his Carroll County appeal is numbered 04 CA 803. This Court consolidated Appellant's appeals since each case involved the rape of the same young boy. For the following reasons, both lower court judgments are affirmed.
 Columbiana County Assignments of Error {¶ 4} Appellant raises three assignments of error on appeal arising from his Columbiana County conviction. In his first assignment of error he asserts:
 {¶ 5} "THE TRIAL COURT ERRED IN FINDING THE NINE YEAR OLD VICTIM TO BE COMPETENT TO TESTIFY."
 {¶ 6} R.C. § 2317.01 provides: "[a]ll persons are competent witnesses except those of unsound mind and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." Children under the age of ten are rebuttably presumed to be incompetent to testify. State v.Payton (1997), 119 Ohio App.3d 694, 705, 696 N.E.2d 240; Statev. Morgan (1986), 31 Ohio App.3d 152, 153, 31 OBR 241,509 N.E.2d 428. The state has the burden to overcome this presumption. Payton, supra.
 {¶ 7} In assessing whether a child is competent to testify, the trial court must conduct voir dire and determine that the child is, "capable of receiving just impressions of relevant facts and * * * capable of relating * * * impressions truly." (Citations omitted.) Payton, supra. In its discretion, a trial court should address the following factors in determining a child's competence to testify: "The child's appearance, demeanor, manner of answering questions posed, and the presence or absence of indications of coaching[.]" (Citations omitted.) Id. at 706.
 {¶ 8} In the instant cause, the trial court conducted a competency hearing at which the trial judge questioned the victim. The victim answered simple questions such as providing his name, age, and date of birth. (Competency Hearing, p. 149.) He was also able to differentiate between telling the truth and a lie, and he indicated that it is important to tell the truth because people will get in trouble. (Competency Hearing, p. 151.) Finally, he indicated that he was prepared to tell the truth. (Competency Hearing, pp. 151-152.) Both counsel were then provided the opportunity to supplement the court's inquiry, but both declined. (Competency Hearing, p. 152.)
 {¶ 9} It should be noted here that the victim was referred — to at the hearing as "somewhat developmentally delayed" because he has mild hearing loss and is required to wear hearing aids. As a result, he is slow in reading and requires a speech teacher for speech and hearing. (Tr., pp. 206, 217.) These physical handicaps, while perhaps affecting his capabilities in school, appear to be irrelevant to the competency determination in this matter.
 {¶ 10} The court found the victim competent to testify. Appellant's counsel did not object or make any remarks when asked if he had anything to add. (Competency Hearing, p. 153.)
 {¶ 11} Appellant now takes issue with the trial court's failure to inquire as to whether the victim had been coached in his testimony. Appellant argues that the trial court's failure to inquire into coaching was necessitated by the victim's statement at the competency hearing. Appellant takes issue with the victim's response when the trial court asked him why he was in court. The victim responded, "[c]ause [sic] I have to put Jim in jail." (Competency Hearing, p. 150.) Appellant argues that this response, coupled with the boy's testimony, reflect that he was coached. As such, the trial court abused its discretion in deeming him competent to testify.
 {¶ 12} Since the record does not contain any objection to the trial court's competency determination, this issue can only be reviewed for plain error. Crim.R. 52(B), plain error, provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
 {¶ 13} "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." State v. Wogenstahl (1996), 75 Ohio St.3d 344,357, 662 N.E.2d 311. The plain error doctrine should be applied sparingly and only when necessary to prevent a clear miscarriage of justice. State v. Sanders (May 17, 2000), 9th Dist. No. 19783, citing State v. Wolery (1976), 46 Ohio St.2d 316, 327, 75 O.O.2d 366, 348 N.E.2d 351, cert. denied 429 U.S. 932,97 S.Ct. 339, 50 L.Ed.2d 301.
 {¶ 14} Appellant asserts that the victim's confusing trial testimony coupled with the trial court's alleged failure to inquire into coaching constitutes plain error. In support of this claim, Appellant refers to the victim's trial testimony during which he appeared to indicate that someone in the courtroom was giving him signals during his direct trial testimony. (Tr., pp. 250-252.) On cross-examination, the victim initially seemed to imply that his mother and another individual were giving him signals. On questioning, when Appellant's attorney used the word "signaling" however, the victim responded, "Signal?" (Tr., p. 252.) The victim was then asked on cross-examination,
 {¶ 15} "Q So when you were talking to this nice man, was your mom or Carrie waving at you or doing anything to get your attention?
 {¶ 16} "A Not really.
 {¶ 17} "Q Not really. Are you sure?
 {¶ 18} "A No." (Tr., p. 253.)
 {¶ 19} On review of the victim's testimony in its entirety, it appears as though the victim was confused on cross-examination because he did not know what the word "signal" meant. The victim was asked whether he knew what the word "signal" meant on redirect examination, and he answered no. (Tr., p. 266.)
 {¶ 20} In addition, the victim's mother was later called as a witness, and she testified that she had no idea what Appellant's counsel was referring to when he was asking about hand signals. She testified that there was no "secret code" between she and her son where she, for example, scratched her head and the victim was supposed to answer a certain way. (Tr., p. 285.) Further, there was no evidence apparent on the record supporting these alleged hand signals.
 {¶ 21} As for Appellant's concerns that someone urged the victim to put him in jail, the victim initially stated on cross-examination that his mother told him to, "put uncle Jim in jail." (Tr., pp. 257-258.) However, he subsequently testified that Sergeant Walker told him that, "[t]hey will put Jim in jail." (Emphasis added.) (Tr., p. 261.)
 {¶ 22} Based on the foregoing, it cannot be said that there was plain error in the trial court's determination that the victim was competent to testify. The record reflects that he was able to differentiate between telling the truth and a lie, and he demonstrated his capability of relaying facts to the jury.
 {¶ 23} Further, any questionable areas of the victim's trial testimony were clarified on redirect when the victim testified that no one told him to make things up. (Tr., p. 264.) Thus, Appellant's first assignment of error lacks merit. It does not appear that the victim was incompetent to testify.
 {¶ 24} In Appellant's second assignment of error stemming from his Columbiana County conviction he argues:
 {¶ 25} "THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 26} The federal and state standards governing ineffective assistance of counsel claims are essentially the same. An ineffective assistance of counsel claim necessitates the application of a two-part test to assess whether a reversal is required:
 {¶ 27} "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v.Thompson (1987), 33 Ohio St.3d 1, 10, 514 N.E.2d 407. Counsel's actions are presumed competent, and a defendant must prove ineffective assistance of counsel. State v. Hamblin (1988),37 Ohio St.3d 153, 155-156, 524 N.E.2d 476.
 {¶ 28} Appellant presents several arguments in support of his ineffective assistance of counsel claim. Appellant first claims that his trial counsel was ineffective in failing to object to the trial court's finding that the victim was competent to testify. This assertion is based on counsel's failure to inquire at the competency hearing into whether the victim was coached in his testimony.
 {¶ 29} However, Appellant fails to direct this Court to any statute or caselaw that require a trial court to consider the presence of indications of coaching. As previously set forth, certain courts have held that the trial court has thediscretion to address this factor in assessing a child's competence to testify. Payton, supra, at 706. But the Payton
court did not require the trial court to directly ask questions concerning the possibility of coaching; it simply referred to whether a trial court can consider indications of coaching. There is nothing before this Court reflecting that the trial court did not consider whether indications of coaching existed in its competency determination. Finally, there is no requirement that a trial court explicitly delineate its competency considerations.
 {¶ 30} Appellant also claims that his trial counsel was ineffective in failing to file a motion to suppress the victim's testimony.
 {¶ 31} The Sixth Amendment right to effective assistance of counsel is not violated by counsel's failure to pursue a motion to suppress unless the claim had merit. State v. Ratcliff
(1994), 95 Ohio App.3d 199, 206, 642 N.E.2d 31.
 {¶ 32} The mere possibility that a motion to suppress has merit is insufficient to establish the ineffective assistance of trial counsel. State v. Delmonico, 11th Dist. No. 2003-A-0022,2005-Ohio-2902, citing State v. Santana (2001),90 Ohio St.3d 513, 739 N.E.2d 798. In Santana, the Ohio Supreme Court underscored the importance of the ineffective assistance of counsel standard of review in Strickland, supra. It also held that the mere "possibility" of success on a motion to suppress is the improper standard in determining whether an ineffective assistance of counsel claim exists. Id. at 515. Instead, courts should employ a "reasonable probability" standard, which is, "a probability sufficient to undermine confidence in the outcome."State v. Bradley (1989), 42 Ohio St.3d 136, 142,538 N.E.2d 373, quoting Strickland at 694.
 {¶ 33} Turning to the case at bar, Appellant asserts error based on the allegation that the victim was being coached and that he responded to numerous leading questions on direct examination. However, as previously set forth, the competency voir dire reflects that the minor was able to recall and relay facts and that he appreciated the consequences of lying. In addition, the victim was very close to the age of competency. He was nine years old at the time of trial. Finally, the asserted basis for the motion to suppress appears to be primarily speculative. There appears no reasonable basis for filing a suppression motion based on the record before us.
 {¶ 34} Unlike most cases of this nature, this matter involves testimony of a witness unrelated to the victim. Appellant also claims error based on his trial counsel's failure to ask the eyewitness, Robert Freeman, about his ability to actually see the incident. The state's direct examination elicited the following trial testimony from Robert Freeman:
 {¶ 35} Freeman testified that he was driving his own truck on the day in question. He coasted toward Appellant's trespassing truck after spotting it trespassing on property under his care. Freeman suspected that Appellant was illegally dumping on Freeman's landlord's property. Freeman's vehicle was more elevated than Appellant's truck since it was on a hill. Upon approaching the driver's side of the truck, Freeman saw a blond head in the driver's lap through the driver's side window. The child's head popped up as Freeman approached and Freeman realized it was a seven or eight-year old boy. The driver had his pants down. When the driver saw Freeman, he pulled up his pants and hit his truck's accelerator. (Tr., pp. 160-164.)
 {¶ 36} Freeman subsequently identified Appellant's photograph without hesitation in a photo array presented to him by the police. (Tr., p. 168.)
 {¶ 37} Contrary to Appellant's assertion on appeal, Appellant's trial counsel did ask Freeman about specific things he was or was not able to see inside the truck that day. Specifically, his counsel asked Freeman if he saw whether Appellant's underwear were pulled down. Freeman could not say for certain whether Appellant had his underwear pulled down or whether he was even wearing underwear that day. Freeman also testified that he could not tell, "what was around his ankle because the door was obstructing that view that far down." (Tr., p. 175.) Freeman was certain that Appellant's pants were around his knees. In addition, Appellant's counsel then established that Freeman did not have a view of the entire interior of the truck's cab and that Freeman did not actually see Appellant's penis in the boy's mouth. (Tr., p. 178.)
 {¶ 38} Based on the foregoing, Appellant did not establish that he was denied the ineffective assistance of counsel as to these allegations. His trial attorney adequately questioned Freeman's ability to see the incident in question. Thus, there was no error.
 {¶ 39} Finally, Appellant complains that his trial counsel failed to object to the trial court's use of the phrase "in this case" in one of the jury instructions. He claims that the use of these words in the instruction left the impression that Appellant was facing other charges. The portion of the jury instruction now in question provides:
 {¶ 40} "Sexual conduct means and includes fellatio, which is a sexual act committed with the penis and the mouth. Sexual conduct, under the law of Ohio, includes several different types of sexual acts. However, this case involves one and only one type, that of fellatio. This Defendant is accused of none other in this case and therefore, no other type of sexual conduct shall be considered by you." (Tr., pp. 333-334.)
 {¶ 41} While the words "in this case" could be construed in the manner argued by Appellant, this construction was probably not apparent to the jury since it is not apparent in the context to any casual reader. In addition, the trial court added this language to the standard jury instruction in response to counsel for Appellant's request for a curative instruction. Appellant's trial counsel subsequently withdrew his request for a curative instruction indicating that the foregoing adequately addressed his concerns. (Tr., pp. 289-290.) In light of this exchange, we cannot find that counsel's failure to object to this instruction was a deficiency.
 {¶ 42} However, even if we assume that counsel's performance was deficient, when reading the jury instructions as a whole we cannot determine that counsel's errors were so serious as to deprive Appellant of a fair trial. Thus, this argument lacks merit. We overrule this assignment of error in its entirety.
 {¶ 43} In Appellant's third assignment of error arising from his Columbiana County conviction he argues that the trial court erred in admitting hearsay statements in contravention to his Sixth Amendment Right to confront witnesses.
 {¶ 44} "THE TRIAL COURT ERRED BUY [SIC] ADMITTING HEARSAY STATEMENTS IN VIOLATION OF THE APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONT WITNESSES."
 {¶ 45} "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally inadmissible. Evid.R. 802.
 {¶ 46} The Confrontation Clause of the Sixth Amendment and the hearsay rule restrict the use of statements of a person not present at trial. The Confrontation Clause of the Sixth Amendment, made applicable to the states via the Fourteenth Amendment, provides that an accused in a criminal prosecution shall have the right to be confronted with the witnesses against him.
 {¶ 47} In this assignment of error, Appellant challenges the admission of the alleged hearsay statements made by Detective Sergeant Steve Walker, which encompassed statements made by Robert Freeman and the victim's grandfather, Frank Rudibaugh. Appellant claims that this testimony was provided for the truth of the matter asserted and constitutes hearsay. Appellant also argues that no applicable hearsay exceptions applied, and that the testimony should have been excluded.
 {¶ 48} It must be noted that Appellant's trial counsel did not object to part of the testimony that Appellant now claims was inadmissible hearsay. Counsel did not object to those portions of Detective Walker's testimony that included Frank Rudibaugh's prior statements. Accordingly, these allegations were not properly preserved for appeal. State v. Wogenstahl (1996),75 Ohio St.3d 344, 357, 662 N.E.2d 311. Therefore, this Court must review this part of his assignment of error under the plain error standard. Crim.R. 52(B).
 {¶ 49} Again, plain error should be recognized, "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum
(1990), 53 Ohio St.3d 107, 111, 559 N.E.2d 710, citing State v.Long (1978), 53 Ohio St.2d 91. Under the general plain error standard, an appellant must demonstrate that the outcome of his trial would clearly have been different but for the errors that he alleges. State v. Waddell (1996), 75 Ohio St.3d 163,661 N.E.2d 1043.
 {¶ 50} Appellant complains about the statements originally made by the victim's grandfather and repeated by Detective Walker in his direct testimony:
 {¶ 51} "Q. And what caused you to talk with [Frank Rudibaugh]?
 {¶ 52} "A. I wanted to see if the [Appellant] had access to any seven or eight year old boys with blonde hair.
 {¶ 53} "Q. Based upon your providing of that description to Mr. Rudibaugh, did he point you in the direction of [the victim]?
 {¶ 54} "A. Yes, he immediately said, that would be my grandson, [the victim].
 {¶ 55} "Q. Based upon that information then, did you contact [the victim's] immediate family, * * * ?
 {¶ 56} "A. Yes, I did. After I concluded that — the interview with Frank Rudibaugh, he had told me that [the victim] liked riding four wheelers with him and idolized James Parks. * * *" (Tr., pp. 78-79.)
 {¶ 57} Contrary to Appellant's claims on appeal, the state argues that the foregoing was not hearsay because it was offered to explain how the investigation against Appellant began, and not for the truth of the matter asserted.
 {¶ 58} In State v. Thomas (1980), 61 Ohio St.2d 223, 232,400 N.E.2d 401, the Ohio Supreme Court recognized that out of court statements are admissible, "to explain the actions of a witness to whom the statement was directed." The Thomas Court found that the statements in that case that would otherwise be considered hearsay were offered, not for the truth of the matter asserted, but to explain the investigative activities of law enforcement officials. Id. Thus, the testimony was properly admitted and did not constitute hearsay.
 {¶ 59} Further, in State v. Knox (June 29, 1997), 10th Dist. No. 96APA09-1265, 7, the court found no error in allowing the state to mention the manner in which the defendant initially became a suspect, since the hearsay testimony was not offered for its truth. Instead, the court found that it was, "offered to explain a police officer's conduct while investigating a crime[.]" Id.
 {¶ 60} This portion of Detective Walker's testimony was admissible since it was offered to explain the manner in which the victim in this case was initially identified. However, this rationale does not extend to testimony Walker offered to the effect that the victim idolized Appellant. This portion of Walker's statement was inadmissible hearsay, offered for the truth of the matter asserted. However, no objection was made to this testimony.
 {¶ 61} Because this oversight requires only a "plain error" review, we note that Appellant does not explain or demonstrate on appeal that the outcome of his trial would clearly have been different but for the inclusion of this hearsay testimony. We will not presume such evidence is apparent on the record. As such, the admission of this testimony does not rise to the level of plain error.
 {¶ 62} The other alleged hearsay statements in issue arose when Detective Walker repeated Robert Freeman's explanation as to how he was able to view the interior of Appellant's truck. This testimony was properly objected to by trial counsel.
 {¶ 63} The testimony provides:
 {¶ 64} "Q. What would have caused him [Freeman] to be able to see so well into that vehicle from the location that he was at?
 {¶ 65} "* * * *
 {¶ 66} "Q. If you know?
 {¶ 67} "A. He stated that he was driving a truck at the time also.
 {¶ 68} "Q. All right.
 {¶ 69} "A. And it is a little bit of downward grade coming in from the lane to the field where the truck — where the [Appellant's] truck had been parked.
 {¶ 70} "Q. So, is it fair to say then, the way he described it to you, he was at an elevated vantage point to view into that vehicle?
 {¶ 71} "A. Yes, that's correct." (Tr., pp. 83-84.)
 {¶ 72} This testimony constitutes inadmissible hearsay since it was offered for the truth of the matter asserted. The trial court appears to have erred in allowing this testimony. However, Freeman essentially testified to the same facts in describing his view into Appellant's truck. (Tr., p. 161.) Thus, Appellant had the opportunity to confront and cross-examine Freeman directly as to his version of the facts.
 {¶ 73} Ohio courts have held that the erroneous admission of a hearsay statement is harmless where another individual testified to the same events at trial. State v. Gough, 5th Dist. No. 2004CA00022, 2004-Ohio-4550; State v. Tucker, 8th Dist. No. 83419, 2004-Ohio-5380. Harmless error is defined as, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights[.]" Crim.R. 52(A) provides that any error that is harmless shall be disregarded. In Gough, supra, the Fifth District Court of Appeals held that any potential error in the trial court's admission of a victim's statement to a police officer was harmless where the victim testified to the same events. Id. at 3.
 {¶ 74} The admission of Detective Walker's hearsay testimony in the instant cause was harmless error based on Freeman's parallel testimony. Accordingly, Appellant's third assignment of error is overruled in its entirety.
 {¶ 75} Based on the foregoing, the Columbiana County Court of Common Pleas' decision is hereby affirmed in Case No. 04 CO 19 because all of Appellant's assignments of error are without merit.
 Carroll County Assignments of Error {¶ 76} Appellant also asserts three assignments of error arising from his Carroll County convictions following his guilty plea to six counts of rape in violation of R.C. §2907.02(A)(1)(b). Each is a felony of the first degree.
 {¶ 77} Most of Appellant's arguments arising from his Carroll County convictions are very similar to those addressed in his Columbiana County assignments of error. Therefore, much of the caselaw and argument is repetitive. Further, we must stress that these assignments of error arise from Appellant's guilty plea to six first degree felony counts of rape following his conviction in Columbiana County.
 {¶ 78} In his first assignment of error he asserts:
 {¶ 79} "THE TRIAL COURT ERRED IN FINDING THE NINE YEAR OLD VICTIM TO BE COMPETENT TO TESTIFY."
 {¶ 80} As set forth previously, children under the age of ten are rebuttably presumed incompetent to testify. State v. Payton
(1997), 119 Ohio App.3d 694, 705, 696 N.E.2d 240; R.C. § 2317.01. The state has the burden to overcome this presumption. Payton,
supra.
 {¶ 81} The determination of competency is within the sound discretion of the trial judge. The trial judge has the opportunity to observe the child's appearance, manner of responding to the questions, general demeanor, and his or her ability to accurately and truthfully relate facts. State v.Wilson (1952), 156 Ohio St. 525, 46 O.O. 437, 103 N.E.2d 552.
 {¶ 82} Appellant again argues that the trial court's determination finding the victim competent to testify was in error. However, Appellant's counsel was present throughout the competency hearing, and he neither supplemented the questioning nor did he object to the trial court's decision finding the victim competent to testify. (Tr., pp. 9-23.) Since no objection was made, any error in the trial court's decision is waived unless it constitutes plain error. Crim.R. 52(B). But for plain error, the outcome of the trial must clearly have been different.State v. Wogenstahl (1996), 75 Ohio St.3d 344, 357,662 N.E.2d 311.
 {¶ 83} Appellant directs this Court's attention to the Ohio Supreme Court's decision in State v. Frazier (1991),61 Ohio St.3d 247, 574 N.E.2d 483, in support of this assignment. Appellant claims that the Supreme Court absolutely requires a court to address all five factors in assessing a minor's competency to testify. One of these alleged mandatory factors is whether the minor's testimony has been coached.
 {¶ 84} However, and contrary to Appellant's claims, theFrazier Court lays out those factors a trial court must consider; it does not require a trial court to specifically address and analyze each factor in detail. The Frazier syllabus provides:
 {¶ 85} "In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." (Emphasis added.) Id.
 {¶ 86} The Frazier decision does not require a trial court to specifically consider and address whether the minor's testimony was coached.
 {¶ 87} The trial court in the instant matter asked the minor whether he believed in God and whether he knew the difference between telling the truth and a lie. The minor indicated that he believed in God and that people who did not tell the truth get into trouble and should be punished. He also indicated that he believed he had a duty to God to always tell the truth. (Jan. 15, 2004, Tr., p. 18.) Thus, the trial court adequately considered the minor's ability to differentiate between telling the truth and a lie.
 {¶ 88} Next, Appellant takes issue with the trial court's limited inquiry into whether the minor was coached. The trial court asked the minor whether anyone told him what to say at his competency hearing, and he twice responded, "I don't know." (Jan. 15, 2004, Tr., p. 17.) Thereafter, the trial court did not inquire any further into this issue. Appellant claims on appeal that this constitutes plain error.
 {¶ 89} Although the trial court certainly could have inquired further into this issue, its failure to do so does not constitute plain error. Appellant has not shown that absent further inquiry, the outcome of the competency hearing would clearly have been different.
 {¶ 90} Further, although certain courts of appeals have held that a court should inquire as to whether a minor was coached, Appellant fails to provide any caselaw mandating a court to specifically inquire into this issue.
 {¶ 91} Based on the foregoing, the trial court's inquiry in the instant matter was sufficient and its findings were within the court's discretion. Thus, no plain error exists and this assignment of error lacks merit.
 {¶ 92} Appellant's second assignment of error arising from his Carroll County plea agreement argues:
 {¶ 93} "THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 94} In order to prove an ineffective assistance of counsel claim, a defendant must establish first that his counsel's performance was deficient, and second, that he was prejudiced as a result of counsel's deficiencies. State v. Thompson (1987),33 Ohio St.3d 1, 10, 514 N.E.2d 407.
 {¶ 95} In virtually identical arguments with his Columbiana County brief, Appellant's basis for this argument is that his trial counsel failed to object to the trial court's finding that the minor victim was competent to testify. He also complains that his counsel failed to file a motion to suppress the victim's testimony.
 {¶ 96} As addressed earlier herein, a trial court has the discretion to address whether a minor's testimony was coached in assessing his competence to testify. Payton, supra, at 706,696 N.E.2d 240.
 {¶ 97} The trial court in this case did address the issue of coaching. The court was evidently satisfied with the minor's responses and his answers as a whole since it found him competent to testify. Although the trial court certainly could have inquired further on this issue, its failure to do so does not rise to the level of ineffective assistance of counsel.
 {¶ 98} As for counsel's claimed failure to file a motion to suppress the minor's testimony, this alleged failure can only constitute reversible error if there is a reasonable probability that the motion would have been successful. State v. Santana
(2001), 90 Ohio St.3d 513, 515, 739 N.E.2d 798.
 {¶ 99} Appellant's counsel's claimed failure in the instant matter is once again based on the theory that the minor's testimony was coached. There is limited evidence supporting this claim; specifically, the minor's uncertain response to one question. When asked whether anyone told him what to say, the minor responded, "I don't know." (Jan. 15, 2004, Tr., p. 17.) Notwithstanding this response, the minor thereafter unequivocally demonstrated his understanding and belief that he had an obligation to be truthful. (Jan. 15, 2004, Tr., p. 18.) Thus, the trial court evidently concluded that his subsequent responses clarified his earlier testimony. Accordingly, this assignment lacks merit and is overruled.
 {¶ 100} Appellant's third and final assignment of error arising from his Carroll County convictions asserts:
 {¶ 101} "THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO CONSECUTIVE PRISON TERMS."
 {¶ 102} Appellant pleaded guilty to six counts of rape in violation of R.C. § 2907.02(A)(1)(b), each a felony of the first degree. Each offense had a mandatory life sentence pursuant to R.C. § 2907.02(B). On March 4, 2004, the trial court imposed a life sentence for each of the six counts. The trial court ordered counts one, two, and three to be served concurrently with one another, and it also ordered the sentences imposed under counts four, five, and six be served concurrently with one another, then ordered that these two life sentences be served consecutively.
 {¶ 103} Appellant argues that the trial court failed to make the requisite statutory findings and reasons in support on the trial court record in order to impose consecutive sentences. For the following reasons, however, this assignment of error also lacks merit.
 {¶ 104} Pursuant to State v. Comer, 99 Ohio St.3d 463,793 N.E.2d 473, 2003-Ohio-4165, a sentencing court is required to make the requisite statutory findings and give its reasons on the record at the sentencing hearing when imposing consecutive sentences. Specifically:
 {¶ 105} "A court may not impose consecutive sentences for multiple offenses unless it `finds' three statutory factors. R.C.2929.14(E)(4). First, the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. * * * Second, the court must find
that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. * * * Third, the court must find
the existence of one of the enumerated circumstances in R.C.2929.14(E)(4)(a) through (c)." (Citations omitted.) (Emphasis in original.) Id. at ¶ 13.
 {¶ 106} R.C. § 2929.14(E)(4)(b) provides that a court must conclude, "[a]t least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by * * * the multiple offenses so committed was so great or unusual that no single prison term * * * adequately reflects the seriousness of the offender's conduct."
 {¶ 107} Appellant now claims that the trial court failed to comply with the Comer required findings and state its reasons in support. However, the record of the sentencing hearing reflects that the trial court satisfied the requisite Comer
findings.
 {¶ 108} In noting that it considered Comer, supra, the trial court initially concluded:
 {¶ 109} "* * * I have been at this business a long time, this is not the first rape of a minor case that's ever come through this court, but it is certainly one of the most egregious, and * * * you have engaged in a pattern and a course of conduct which has caused serious and unusual harm to this child, not just in the physical injury, which in and of itself is bad enough. * * * But this child has also been now the victim, * * * to a substantial emotional and psychological damage." (Sentencing Tr., p. 11.)
 {¶ 110} This finding satisfies the finding and supporting reasons under R.C. § 2929.14(E)(4)(b).
 {¶ 111} Thereafter the court concluded that consecutive sentences were necessary:
 {¶ 112} "[T]o protect the public from future crime and to punish the offender. I don't think there is any question that statistically pedophiles, such as yourself, and a sexual predator are at the top of the scale for recidivism, and most likely to re-offend, so obviously the Court has an obligation to protect the public from future similar activity on your part and frankly to punish you for what you have done. The Court finds that consecutive sentences are not disproportionate to the seriousness of your conduct and to the danger you pose to the public as a pedophile, and as a sexual predator. Three, the Court finds that the harm caused to the victim was so great that no single prison term adequately reflects the seriousness of your misconduct * * * the court finds that your criminal conduct history demonstrates the consecutive sentences are necessary to protect the public from future activity by yourself." (Sentencing Tr., pp. 12-13.)
 {¶ 113} The trial court also stated additional reasons for its decision, which included that Appellant showed absolutely no remorse; the offenses occurred over a period of years; and that Appellant was in a position of trust in the victim's life, noting that the victim referred to Appellant as "Uncle Jim." (Sentencing Tr., pp. 10-12.)
 {¶ 114} The foregoing more than adequately satisfy the first and second findings required under R.C. § 2929.14(E) and Comer,
supra.
 Conclusion {¶ 115} Based on all of the above, the judgment of the trial court in both 04 CO 19 and 04 CA 803 are affirmed in full.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.