[Cite as *State v. Trimacco*, 2013-Ohio-1114.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

STATE OF OHIO,                          )
                                        )
    PLAINTIFF-APPELLEE,                 )
                                        )          CASE NO. 12 CO 7
V.                                      )
                                        )          OPINION
RYAN M. TRIMACCO,                       )
                                        )
    DEFENDANT-APPELLANT.                )


| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Criminal Appeal from Court of Common Pleas of Columbiana County, Ohio Case No. 11CR163 |
| JUDGMENT: | Affirmed |

APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee | Robert Herron Prosecutor John E. Gamble Assistant Prosecutor 105 South Market Street Lisbon, Ohio 44432 |
| For Defendant-Appellant | Attorney Bryan H. Felmet 1100 Jackson Place Steubenville, Ohio 43952 |

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: March 19, 2013

DONOFRIO, J.

{¶1} Defendant-appellant, Ryan Trimacco, appeals from a Columbiana County Common Pleas Court judgment convicting him of theft following a jury trial.

{¶2} From late December 2010 to early January 2011, William Lewis employed Travis Carney to upgrade the security system at his Lisbon home. Carney worked alone and when he needed help, Lewis helped him.

{¶3} On January 6, 2011, Carney showed up to work at Lewis's house with appellant, who was to help Carney. That day, they were working on installing wires to a DVR in Lewis's master bedroom.

{¶4} Lewis left the house at approximately 2:00 p.m., thinking that his cleaning lady would be there shortly. He returned home between 4:00 and 4:30 p.m. His cleaning lady had just arrived. Carney and appellant were gone by then.

{¶5} That evening Carney noticed that his Rolex watch was missing from his bedroom. And when his wife returned from work, she noticed that her diamond ring was missing from a shelf in the kitchen.

{¶6} After confirming with his wife and his cleaning lady that they had not moved the watch, Lewis called the sheriff's office to report it and the ring missing. Lewis also called Carney because he suspected that appellant stole the items.

{¶7} According to Carney, he, appellant, and Lewis were the only people in Lewis's house that day. When they had finished their work, Carney dropped appellant off at a friend's apartment on South Avenue. After hearing from Lewis that his watch and ring were missing, Carney called appellant and told him to "fess up." However, appellant denied stealing from Lewis.

{¶8} Detective Jeff Haugh advised Lewis to check with several local pawn shops for his watch. Upon inquiry, the custodian of records at Leslie's Precious Metals informed Lewis that he had seen the watch. He was able to recover the watch for Lewis. He also provided Lewis with the receipt from when he purchased the watch from a man named Douglas Stout and a photocopy of Stout's ID card. According to the receipt, Stout sold the watch to Leslie's at 6:30 p.m. on January 6, 2011. The ID card listed Stout's address as 7500 Huntington Drive, Boardman, Ohio.

{¶9} Lewis provided the information to Det. Haugh. After no luck with the Huntington Drive address, Det. Haugh located Stout at 4611 South Avenue. The detective interviewed Stout. However, after the interview he was unable to locate Stout again.

{¶10} A Columbiana County Grand Jury indicted appellant on one count of theft where the value of the property stolen was $5,000 or more and less than $100,000, a fourth-degree felony in violation of R.C. 2913.02(A)(1).

{¶11} The case proceeded to a jury trial. The jury found appellant guilty as charged. The court proceeded immediately to sentencing. It sentenced appellant to 18 months in prison.

{¶12} Appellant filed a timely notice of appeal on February 27, 2012.

{¶13} Appellant raises four assignments of error. The first two share a common basis in fact. Therefore, we will address them together. They state:

THE JUDGMENT OF CONVICTION IS CONTRARY TO LAW AND TO THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, IN THAT THERE WAS INSUFFICIENT EVIDENCE ADDUCED TO ESTABLISH EACH AND EVERY ELEMENT OF THE OFFENSE BEYOND A REASONABLE DOUBT.

THE JUDGMENT OF CONVICTION IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14} Appellant first argues there was insufficient evidence to convict him. He contends that the evidence required the jury to draw too many inferences in order to find him guilty. And he asserts that the jury would have to rely on hearsay evidence from Carney about what appellant's uncle had told him and from Det. Haugh about what an unnamed girl who claimed to be Stout's girlfriend told him.

{¶15} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a

matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

{¶16} The jury convicted appellant of theft in violation of R.C. 2913.02(A)(1), which provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over * * * the property * * * [w]ithout the consent of the owner or person authorized to give consent." Because the value of the stolen property was $5,000 or more and less than $100,000, the theft offense was a fourth-degree felony.

{¶17} We must examine the evidence presented at trial in order to determine whether it was sufficient to support the jury's verdict.

{¶18} Lewis was the first to testify. He stated that Carney had been working on his security system on and off for two weeks. (Tr. 134). On January 6, Carney brought appellant with him to help. (Tr. 135). On that day, they were running cables to a DVR in the master bedroom. (Tr. 136).

{¶19} Lewis was home with appellant and Carney until approximately 2:00 p.m. (Tr. 136). He left thinking that his cleaning lady of 22 years would be there at 2:00. (Tr. 137, 152). Carney returned home between 4:00 and 4:30 p.m. (Tr. 137). His cleaning lady had just arrived. (Tr. 137).

{¶20} Lewis testified that later that evening he noticed that his Rolex watch was missing. (Tr. 137). He questioned his wife and his cleaning lady thinking that one of them had moved it, but neither one had. (Tr. 137-138). Lewis's wife then noticed that her diamond ring was missing from the shelf by the kitchen sink. (Tr. 138).

**{¶21}** Lewis further testified that the only people in and out of his house that day were him, Carney, and appellant. (Tr. 148). He reviewed his video recording of the outside of the house, which confirmed this fact. (Tr. 148).

**{¶22}** Lewis stated that he called the sheriff's office the next morning to report the items missing. (Tr. 140). Det. Haugh advised appellant to check with various pawn shops to see if they had seen the missing items. (Tr. 140-141). When Lewis inquired at Leslie's Precious Metals, the man there said that he had come across the watch. (Tr. 142). The man recovered the watch for Lewis. (Tr. 143). Lewis never recovered the diamond ring. (Tr. 146).

**{¶23}** Lewis testified that the diamond ring was worth approximately $4,500. (Tr. 138). The Rolex was appraised at $10,500. (Tr. 139; State Ex. 2).

**{¶24}** On cross-examination, Lewis stated that this was the second time his watch was stolen. (Tr. 148). The first time his son, who has a drug problem, stole it from him. (Tr. 148-149). This was one of the reasons he was upgrading his security system. (Tr. 149).

**{¶25}** Carney testified next. He stated that he brought appellant with him to help with the work at Lewis's house. (Tr. 180-181). Carney stated that he, Lewis, and appellant were the only people in Lewis's house from the time he arrived until the time he left. (Tr. 183).

**{¶26}** After they finished at Lewis's house, Carney stated that he dropped appellant off at a friend's apartment on South Avenue in Youngstown. (Tr. 184). He stated that 4611 South Avenue sounded like the address where he dropped appellant off. (Tr. 184). Carney stated that he pulled into the apartment complex and appellant jumped out and went behind the building. (Tr. 185).

**{¶27}** Carney stated that Lewis called him that evening and told him he was missing a watch and a ring. (Tr. 185). Carney testified that he questioned appellant about the missing items and appellant insisted that he did not take them. (Tr. 185). In the days that followed, Carney told appellant to "fess up," but appellant did not. (Tr. 186). That was the last contact Carney had with appellant. (Tr. 186).

**{¶28}** On cross-examination, Carney stated that he did not see appellant take the ring or the watch. (Tr. 193). However, he and appellant were not always in the same room while at Lewis's house and the two were even in separate buildings on Lewis's property at one point. (Tr. 194).

**{¶29}** Dominic Eckman, the custodian of records at Leslie's Precious Metals, was the next witness. Eckman testified that on January 6, 2011, he purchased a Rolex watch from Douglas Stout at 6:30 p.m. (Tr. 199-201; State Ex. 1). This was Lewis's watch. (Tr. 203). Eckman had the receipt from the transaction and also a copy of Stout's ID card. (State Ex. 1; Tr. 200). The ID listed Stout's address as 7500 Huntington Drive, Boardman, Ohio. (State Ex. 1).

**{¶30}** Eckman later sold the watch to another dealer. (Tr. 202). After Lewis contacted him and they identified the watch, Eckman recovered it for Lewis. (Tr. 202-204).

**{¶31}** Det. Haugh was the final witness. Det. Haugh testified that Lewis contacted him on January 7, about the missing watch and ring. (Tr. 201). He contacted several pawn shops in an attempt to locate Lewis's jewelry. (Tr. 211). He also interviewed Carney but was unable to locate appellant. (Tr. 213). Det. Haugh suggested to Lewis to check Leslie's Precious Metals as that store did not release information to the police without a court order. (Tr. 215). After Lewis recovered the watch, Det. Haugh obtained a copy of the purchase slip from the business. (Tr. 218).

**{¶32}** After receiving the purchase slip, Det. Haugh tried to locate Stout. (Tr. 218). He checked the Huntington Drive address and then ran Stout through some computer programs where he discovered an address of 4611 South Avenue, Apartment 5. (Tr. 218). Det. Haugh went to the South Avenue apartment unannounced. (Tr. 219). Stout's girlfriend answered the door. (Tr. 219). Det. Haugh made arrangements with the girlfriend to speak with Stout later that afternoon. (Tr. 222). Due to a snowstorm, Det. Haugh rescheduled the meeting with Stout for February 4. (Tr. 222-223). Det. Haugh spoke with Stout on the phone that day and arranged to meet Stout at 4611 South Avenue, Apartment 5. (Tr. 223). When Det.

Haugh arrived at the apartment, he found a note from Stout telling him to meet him at McDonald's. (Tr. 224). Stout also left his cell phone number on the note. (Tr. 224). Det. Haugh called Stout's cell phone to confirm and then met him at McDonald's. (Tr. 224). Det. Haugh interviewed Stout that day about the watch. (Tr. 225). Since that interview, Det. Haugh stated he has been unable to locate Stout. (Tr. 225).

**{¶33}** The evidence clearly established that a Rolex watch was stolen from Lewis's house and that the value of the watch was $5,000 or more and less than $100,000. The only real question was whether appellant was responsible for the theft.

**{¶34}** The evidence, when construed in the light most favorable to the state, was sufficient to support the jury's finding that appellant stole the watch.

**{¶35}** First, the only people in Lewis's house that day were appellant, Carney, Lewis, and Lewis's cleaning lady. From 2:00 p.m. until approximately 4:00 p.m., appellant and Carney were alone in Lewis's house. They were not always in the same room together. The cleaning lady did not arrive until between 4:00 and 4:30 p.m. and Lewis arrived home just after her.

**{¶36}** Second, after leaving Lewis's house, Carney dropped appellant off at his friend's apartment on South Avenue. Carney believed the address to be 4611. At 6:30 p.m., that same day, Douglas Stout sold Lewis's Rolex watch to Leslie's Precious Metals. After trying to locate Stout at the Huntington Drive address listed on his ID card, Det. Haugh came up with an address for Stout of 4611 South Avenue, Apartment 5. Det. Haugh made arrangements to meet Stout at that address. When Det. Haugh went to the South Avenue apartment he found a note on the door to him from Stout directing him to meet Stout at a nearby McDonald's, which he did.

**{¶37}** The evidence in this case was circumstantial. But circumstantial evidence is sufficient evidence on which to convict.

> "It is * * * well-settled under Ohio law that a defendant may be convicted solely on the basis of circumstantial evidence. [P]roof of guilt may be made by circumstantial evidence as well as by real evidence and direct

> or testimonial evidence, or any combination of these three classes of evidence. All three classes have equal probative value, and circumstantial evidence has no less value than the others. Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable."

(Internal citations and quotations omitted.)  *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988).

**{¶38}** Based on the evidence, it was reasonable for the jury to draw the conclusion that appellant stole the watch from Lewis's house, that he brought it to Stout, and that Stout immediately sold the watch to Leslie's.  Thus, there was sufficient evidence on which to find appellant guilty.

**{¶39}** Appellant next argues that the jury's verdict was against the manifest weight of the evidence.

**{¶40}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'"  *Id.*  (Emphasis sic.)  In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial.  *Id.* at 390.

**{¶41}** Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction.  *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor.

*State v. Rouse*, 7th Dist. No. 04-BE-53, 2005-Ohio-6328, ¶49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99-CA-149, 2002-Ohio-1152.

{¶42} Appellant's defense at trial was to suggest that someone else might have stolen Lewis's watch. Appellant's counsel questioned Lewis regarding his son who had a drug problem. Lewis testified that his son had stolen the watch from him at some time in the past, but he had recovered it. (Tr. 148-149, 151-152). Counsel also questioned Lewis about why he was having more security cameras installed. Lewis testified that he wanted to be able to see more of his house, especially in light of the fact that he had a son with a drug problem who had stolen from him in the past. (Tr. 148-149).

{¶43} While counsel tried to insinuate that Lewis's son may have been the culprit in this case, both Lewis and Carney testified that that they, along with appellant, were the only ones in Lewis's house on the day in question. Lewis even checked the video surveillance of the outside of the house to see if anyone else entered the house that day.

{¶44} Moreover, as discussed above, the timeline of events demonstrated that appellant and Carney left Lewis's house sometime between 2:00 and 4:00 p.m. Lewis dropped appellant off at 4611 South Avenue. Stout sold Lewis's watch to Leslie's at 6:30 p.m. Several weeks later, Det. Haugh made arrangements to meet with Stout at 4611 South Avenue and Stout left a note for the detective at this address.

{¶45} Given this evidence we cannot conclude that the jury lost its way in convicting appellant. It was within the jury's province to draw the conclusion that appellant stole the watch from Lewis and brought the watch to Stout who then sold it to Leslie's. Thus, the jury's verdict was not against the manifest weight of the

evidence.

{¶46} According, appellant's first and second assignments of error are without merit.

{¶47} Appellant's third assignment of error states:

THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION WHEN THE TRIAL COURT ADMITTED HEARSAY EVIDENCE MADE BY DECLARANTS WHO WERE NOT AVAILABLE FOR CROSS-EXAMINATION.

{¶48} During Det. Haugh's testimony, the prosecutor asked him what he found when he went to 4611 South Avenue, Apartment 5. (Tr. 219). Det. Haugh stated that appellant's girlfriend was there and she said, "He's not home." (Tr. 219). Appellant objected based on hearsay. (Tr. 219). The prosecutor stated that he was questioning Det. Haugh to explain what the detective did. (Tr. 219). The court instructed the prosecutor to restate his question. (Tr. 219). The following exchange then took place:

Q When you arrived at 4611 South Avenue and you spoke to Douglas Stout's girlfriend, you were speaking with her to learn his whereabouts; is that right?

A Correct.

Q All right. And what did she tell you? Did he live there or did he not?

A He lived there but he was not home at the time.

The trial court then stated that because the prosecutor rephrased the question, the objection would be overruled. (Tr. 219-220).

{¶49} Shortly thereafter the prosecutor asked Det. Haugh:

Q  What did you do?  Or what did you talk with her about in order to make arrangements to speak to Douglas Stout?

A  Because she said that he would be back later in the afternoon.

Appellant objected, again on the basis of hearsay.  (Tr. 221).  This time the trial court sustained the objection.  (Tr. 221).

**{¶50}** Appellant argues the state struggled in this case to connect him to Stout and to prove where Stout lived.  Thus, he contends that the information that came from the unnamed girlfriend about Stout was critical to the state's case.  Appellant asserts that the only way to connect him to Stout was to show Stout lived near where Carney dropped him off on January 6.  And the only way to do that, appellant states, was to get Det. Haugh to tell the jury what the girlfriend and Stout said to him.

**{¶51}** A trial court has broad discretion in determining whether to admit or exclude evidence and its decision will not be reversed absent an abuse of discretion. *State v. Mauldin*, 7th Dist. No. 08-MA-92, 2010-Ohio-4192; *State v. Mays*, 108 Ohio App.3d 598, 617, 671 N.E.2d 553 (8th Dist.1996).  Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable.  *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶52}** Hearsay is an out-of-court statement, offered in court, to prove the truth of the matter asserted.  Evid.R. 801(C).  Generally, hearsay is inadmissible.  Evid.R. 802.

**{¶53}** But a court may admit an out-of-court statement when it is offered to explain law enforcement's investigative activities.  *State v. Parks*, 7th Dist. No. 04-CO-19, 2005-Ohio-6926, ¶58, citing *State v. Thomas*, 61 Ohio St.3d 223, 232, 400 N.E.2d 401 (1980).  This is in order "'to explain the actions of a witness to whom the statement was directed.'"  *Id.*, citing *Thomas*, supra.

**{¶54}** While the prosecutor did need to connect Stout to the 4611 South Avenue apartment, this was not his purpose in the above cited testimony.  Instead,

the above-cited testimony came as part of a question-and-answer series where the prosecutor walked Det. Haugh through the steps of his investigation. (Tr. 218-224).

{¶55} Furthermore, the prosecutor was able to solicit the information needed from Det. Haugh to connect Stout to 4611 South Avenue later in his testimony. The prosecutor questioned Det. Haugh as follows:

> Q Detective Haugh, did you make arrangements to speak with Greg [sic.] Stout - -
>
> A I did.
>
> Q - - on the 4th of February?
>
> A I did.
>
> Q All right. Did you speak with him by phone on that day?
>
> A Telephone, yes.
>
> Q And where were you expected to meet with Douglas Stout?
>
> A I went to 4611 South Avenue, Apartment 5.
>
> Q After your conversation with him you believe he was expecting you there.
>
> A Yes.
>
> Q All right. And when you arrived at 4611 South Avenue, at what apartment?
>
> A Five.
>
> Q Apartment five, what did you find?
>
> A I found a note on the door that said, "Sergeant Haugh, I am at McDonald's. Give me a call and we can meet there."
>
> Q Did you call him?
>
> A Yes, I did.
>
> Q How did you call?
>
> A By my cell phone to his number.
>
> Q How did you get the number?
>
> A It was on the note.

(Tr. 223-224). There was no objection during this line of questioning. Thus, the prosecutor was able to provide other evidence that connected Stout to the South Avenue Apartment. He did not have to rely on the evidence appellant objected to as appellant asserts. Therefore, even if it was error to admit the testimony regarding what Stout's girlfriend told Det. Haugh, any error was harmless.

{¶56} Accordingly, appellant's third assignment of error is without merit.

{¶57} Appellant's fourth assignment of error states:

THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION WHEN THE TRIAL COURT FAILED TO ORDER HEARSAY EVIDENCE STUCK [sic.] FROM THE RECORD AND FAILED TO INSTRUCT THE JURY TO DISREGARD HEARSAY EVIDENCE.

{¶58} Appellant argues that while the trial court sustained some of the objections to Carney's testimony and to Det. Haugh's testimony discussed in assignment of error three, the court should have given the jury a cautionary instruction not to consider the testimony to which the objections were sustained. Furthermore, he asserts that the court's standard instructions not to consider answers stricken by the court and to disregard stricken answers do not apply here because the court never ordered any answers stricken from the record and never ordered the jury to disregard anything. Because the state did not have a strong case against him, appellant asserts the evidence to which the objections were sustained, but to which the court did not give a disregarding instruction, likely contributed to the jury's finding of guilt.

{¶59} Appellant takes issue with several questions and answers. Specifically, during Carney's testimony the following exchange took place:

Q  Did you have any concerns about Trimacco before you hired him?  Or did his uncle express to you anything that you should be concerned about?

MR. HURA [appellant's counsel]:  Objection.

A  He did mention that - -

THE COURT:  Wait. Wait. Go ahead.

MR. HURA:  The question is did his uncle express any concerns that he might have; that's hearsay.

THE COURT:  I'm going to sustain that.  Mr. Gamble, if you could re-ask your question.

Q  Did you have any concerns yourself about hiring or using Mr. Trimacco on a case-by-case or job-by-job basis?

A  Only based on Tom Reegley's description of previous  - -

MR. HURA:  Objection, Your Honor.

THE COURT:  Okay.  I'm going to sustain that objection again. All right.

(Tr. 179-180).

{¶60} Here Carney did not get a chance to explain the concern he had.  And clearly any reservation about appellant could not have been too troubling to him because he used appellant as an employee.  Thus, there was no prejudice in the above exchange with Carney.

{¶61} Appellant also takes issue with the following exchange between the prosecutor and Det. Haugh:

Q  What did you do?  Or what did you talk with her [Stout's girlfriend] about in order to make arrangements to speak to Douglas Stout?

A  Because she said that he would be back later in the afternoon.

> MR. HURA: Your Honor, I object again. Again, all this he said she said, it's clearly hearsay.
>
> THE COURT: Okay. I'm going to sustain the objection. The question was what did you do, not what did she say.

(Tr. 221-222). Det. Haugh then testified that he made arrangements to meet with the girlfriend and Stout. (Tr. 222).

**{¶62}** A few questions later, the prosecutor asked:

> Q And to the best of your knowledge was Douglas Stout expecting you on that date?
>
> A Doug Stout told me he lived at - -
>
> MR. HURA: Objection, Your Honor. Again, it's - - he's saying what Doug Stout said. Doug Stout should be here to testify what he did or did not say. This is clearly hearsay.
>
> MR. GAMBLE: It's not. What I'm asking Detective Haugh is not offered to prove the truth of the matter asserted, only to explain what Detective Haugh did next.
>
> THE COURT: All right. I'm going to sustain the objection. Detective Haugh can testify what he did. Okay.

(Tr. 223).

**{¶63}** Here Det. Haugh never actually stated what Stout told him. Counsel objected before Det. Haugh could say where Stout told him he lived. Thus, Det. Haugh did not offer any hearsay here.

**{¶64}** Finally, appellant takes issue with the following question and answer where the prosecutor asked Det. Haugh:

> Q As a result of your investigation, did you learn whether or not the Defendant maintained any relationship with Douglas Stout?

A  Doug Stout told me that he had met Ryan Trimacco about  - -

(Tr. 226).  Once again appellant objected and the court sustained the objection.  (Tr. 226).

{¶65}  Of the questions and answers appellant takes issue with, this is the only one that is somewhat troubling.  Although the court sustained the objection, it did not do so until Det. Haugh stated that Stout told him that he knew appellant.  And, as appellant asserts, the court did not instruct the jury to disregard Det. Haugh's answer.

{¶66}  The relevant jury instructions in this case were:

> Statements or answers that were stricken by the Court, or which you were instructed to disregard are not evidence and must be treated as though you never heard them.
>
> You must not speculate as to why the Court sustained an objection to any question or what the answer to such question might have been.  You must not draw any inference or speculate on the truth of any suggestion included in a question that was not answered.

(Tr. 279-280).

{¶67}  These instructions do not specifically instruct the jury to disregard the answer to a question when an objection is sustained.  They only instruct the jury not to speculate as to what an answer may have been or as to what suggestion was being offered.  A better instruction would have included language that the jury was to disregard any testimony to which the court sustained an objection.  Or better still, the trial court should have instructed the jury to disregard Det. Haugh's statement about Stout and appellant at the time it sustained the objection.

{¶68}  But given that the prosecutor was able to connect Stout to 4611 South Avenue that Carney testified he dropped appellant off at a friend's apartment at 4611 South Avenue, and that Stout sold Lewis's watch the same day appellant worked at Lewis's house, the jury had ample evidence on which to convict appellant without the

hearsay statement from Det. Haugh.  Thus, any error here was harmless.

{**¶69**}  Accordingly, appellant's fourth assignment of error is without merit.

{**¶70**}  For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.