THE STATE OF OHIO, APPELLEE, *v.* CURTIS, APPELLANT.

(No. 77-715—Decided April 26, 1978.)

130

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, *Mr. William E. Breyer* and *Mr. William P. Whalen, Jr.,* for appellee.

*Mr. Jack C. Rubenstein* and *Mr. William S. Abernathy, Jr.,* for appellant.

McCORMAC, J. Appellant's first contention is that the trial court erred in overruling the motion to suppress the evidence of the .38 caliber revolver found in the trunk of defendant's automobile, since the search warrant authorized a search of the dwelling only and did not specifically provide for a search of the vehicle. Appellant's argument is that the search warrant must have specified that defendant's car was to be searched in order to justify the search of the car for items of contraband even though the car itself was specified as an item to be seized.

We find no merit to this contention. Defendant's car was properly seized as an item of evidence pursuant to a valid search warrant, and thus was lawfully in the custody of the police to be used as evidence in the subsequent trial. This case is closely analogous to the case of *Cooper* v. *California* (1967), 386 U. S. 58, where a car was legally seized by the police pursuant to a state statute which provided for seizure of a vehicle used in connection with possession of narcotics to be held as evidence until a forfeiture was declared or release ordered. In justifying a subsequent search of the seized vehicle without a search warrant, the court, at pages 61-62, said, "Here the officers seized the petitioner's car because they were required to do so by state law. They seized it because of the crime for which they arrested petitioner. They seized it to impound it and they had to keep it until forfeiture proceedings were concluded. Their subsequent search of the car * * * was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained. * * * It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it."

The facts herein differ from those in *Cooper,* in that the car was seized as contraband pursuant to a valid search warrant rather than by virtue of a state statute. Nonetheless, the car was validly in the custody of the police to be held as evidence as in the *Cooper* case. Thus, a search of the car, an item of contraband, was reasonable despite the

absence of language in the search warrant specifying that the automobile may be searched for other items, such as the revolver, which were listed in the search warrant. As in *Cooper,* it matters not whether the search was conducted at the scene or at the police station. In either case the search was reasonable. Moreover, testimony at trial indicated that the trunk of the car was searched because defendant stated that the revolver was there.

Based on the facts of this case, the search of the automobile was reasonable. It would be unreasonable to hold that the defendant's garage, bedroom, attic or basement could be searched for the weapon used in the homicide, but that the automobile parked adjacent to his residence could not be searched, without being specifically named as a place to be searched, even though the automobile itself was listed in the warrant as an item to be seized and held for evidence.

Appellant contends next that the Ohio scheme for imposing the death penalty is unconstitutional because the process is patently vague, arbitrary, and capricious. Particularly, appellant argues that there are five areas of arbitrary discretion which invalidate the death penalty in Ohio: discretion of the prosecution, discretion in plea bargaining, discretion of the jury, discretion in sentencing, and discretion of executive clemency.

The United States Supreme Court has rejected the proposition that discretion in the cited areas of prosecution of a capital punishment case results in the invalidation of the system. See *Gregg* v. *Georgia* (1976), 428 U. S. 153. It is only when the discretion is not suitably directed and limited so as to minimize the risk of arbitrary and capricious actions that the system is unconstitutional. As we have previously held, the Ohio system is not arbitrary and capricious in this respect. Sufficient standards are provided to comply with constitutional mandates against cruel and unusual punishments. *State* v. *Bayless* (1976), 48 Ohio St. 2d 73; *State* v. *Toth* (1977), 52 Ohio St. 2d 206, at page 216.

Appellant's third contention is that the trial court erred in that its finding of no mitigating circumstances was based on cursory psychiatric examinations.

Five psychiatrists testified at a mitigation hearing held in March 1976, approximately four months after defendant was convicted of the charge. Two of the psychiatrists, Dr. Weaver and Dr. Titchener, had examined defendant prior to trial in regard to a determination as to the defendant's ability to aid in his defense. Both of these psychiatrists testified that defendant was not psychotic or mentally deficient. The examination of Dr. Weaver was of a one-hour duration. Dr. Titchener examined defendant on two occasions, of one hour each, prior to trial. Dr. Weaver stated that it was not necessary for him to update his conclusions by examining defendant further as his opinion would remain the same.

Three additional psychiatrists, Drs. Mockbee, Enzer and Ackdoe, examined defendant after trial. Dr. Ackdoe conducted an examination in excess of one hour and concluded that defendant was not psychotic or mentally deficient. Dr. Ackdoe's definition of mental deficiency was broad, including developmental, biological, and social defectiveness in dealing with everyday circumstances. Dr. Mockbee conducted two one-hour examinations. He found defendant to be out of contact with reality, mentally ill and psychotic. Dr. Mockbee's specific diagnosis was schizoaffective schizophrenia. He also said that two hours was an inadequate time for examination. Dr. Enzer found that defendant was not psychotic, nor did he find defendant to be mentally deficient. He said that mental deficiency includes character disorder. Dr. Enzer criticized the term mental deficiency, stating that he did not know what it meant, but that he thought it was a legal term as opposed to a proper medical term. Dr. Enzer spent 6¼ hours in examining the defendant and preparing his report. He found a defect in development of defendant's personality and character, and that defendant loses control when fatigued, drinking or challenged as to his adequacy.

The defendant did not make a statement, but two lay witnesses, Sandra Curtis and Glenn Sullivan, testified on his behalf at the mitigation hearing. Glenn Sullivan is a good friend of the defendant and his former supervisor in the security business. He testified that he was with the defendant from 10:50 p. m. until about 4:00 a. m. on the night preceding the murder, and that defendant was very tired and had consumed about 10 mixed drinks.

Sandra Curtis testified that her husband, the defendant, became vulgar, violent and aggressive when intoxicated, and under these circumstances, had previously beaten her.

In summary, although there was a conflict of medical opinion, there was ample evidence to find that defendant was not psychotic or mentally deficient so as to entitle the trial court to conclude that none of the mitigating circumstances had been established by a preponderance of the evidence. See State v. Downs (1977), 51 Ohio St. 2d 47; State v. Toth (1977), 52 Ohio St. 2d 206, 216. Furthermore, the trial court complied with the requirement of R. C. 2929.03(D) in requiring a pre-sentence investigation and a psychiatric examination to be made. It cannot be said that the examinations conducted by five psychiatrists were inadequate, only one of whom felt that additional testing or examination would help. There was no objection to the timing of the hearing nor was there a request made for additional examinations.

There was no error in the conduct of the mitigation hearing nor was the court's finding based on inadequate evidence.

Appellant contends last that the testimony of Miss Chitwood, regarding the identification of defendant at or near the scene of the crime shortly before the commission of the crime, should have been prohibited in that her identification was tainted by an improper showup of defendant.

There was no motion to suppress Miss Chitwood's testimony prior to trial, nor was there any objection to her court room identification. Any error in the admission of the evidence is waived unless there was plain error. (See

*State* v. *Long* [1978], 53 Ohio St. 2d 91, for the test to be applied for plain error.) There was not plain error in admitting Miss Chitwood's testimony. It is doubtful that there was any error. There was ample testimony that Miss Chitwood's identification at trial was based upon an independent observation of the accused, rather than being the product of a suggestive showup. The witness was in close proximity to the defendant less than two days previous to the showup for several minutes in what she described to be a well-lighted area. She had a good opportunity to observe the defendant and to be able to identfy him. See *State* v. *Jackson* (1971), 26 Ohio St. 2d 74. Additionally, her identification testimony was not so critical to the conviction of defendant so that, without it, the outcome would clearly have been otherwise. Defendant and his automobile were observed by other witnesses in the area shortly before the time of the incident. The murder weapon was found in defendant's possession, and the bullets in the victim's body were matched to that weapon. The victim's personal effects were also found in the possession of the defendant. Irrespective of Miss Chitwood's testimony, there is no doubt that defendant was the perpetrator of the crime.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN, P. BROWN and SWEENEY, JJ., concur.

McCORMAC, J., of the Tenth Appellate District, sitting for LOCHER, J.