[Cite as *State v. Parks*, 2012-Ohio-3011.]

STATE OF OHIO, CARROLL COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.    11 CA 873 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS. - | ) | O P I N I O N |
| | ) | |
| JAMES PARKS, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:       Criminal Appeal from Common Pleas
                                Court, Case No. 2003CR4477.

JUDGMENT:                       Affirmed.

APPEARANCES:
For Plaintiff-Appellee:          Attorney Donald Burns
                                 Prosecuting Attorney
                                 Attorney Steven Barnett
                                 Assistant Prosecuting Attorney
                                 11 East Main Street
                                 Carrollton, Ohio  44615

For Defendant-Appellant:         James Parks, *Pro se*
                                 #463-038
                                 Trumbull Correctional Institution
                                 P.O. Box 901
                                 Leavittsburg, Ohio  44430


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro

                                Dated:  June 18, 2012

VUKOVICH, J.

{¶1} Defendant-appellant James Parks appeals the decision of the Carroll County Common Pleas Court denying his motion to vacate a void judgment. He argues that a new statute dealing with police procedures in administering photographic line-ups shows that the line-up used in his case was faulty and that this would void his conviction. However, the statute does not apply retroactively, and a line-up issue would not cause a trial court to lose jurisdiction. Moreover, appellant waived this issue by failing to raise it in the trial court and by pleading guilty. In addition, the motion is essentially an untimely post-conviction petition, and any issues with the photographic array could have been raised earlier. Accordingly, the trial court's judgment is upheld.

## STATEMENT OF THE CASE

{¶2} On May 5, 2003, a witness called the police to report that, while investigating a possible trespass in a field in Lisbon, he saw a man in a truck pulling up his pants and then saw a young male child raise his head from the man's lap. The witness tried to corner and then follow the vehicle but was unsuccessful. He described the man and the truck to police. This witness later identified appellant from a photographic array presented to him on May 12, 2003.

{¶3} As a result, investigations ensued in Columbiana and Carroll Counties and indictments were filed in both counties. The Carroll County indictment charged appellant with six counts of rape of an eight-year-old boy, one for each month beginning in December of 2002 and ending in May of 2003. After a jury convicted him of one count of rape in Columbiana County, he pled to the six counts of rape in Carroll County. On March 4, 2004, the Carroll County Common Pleas Court sentenced him to life sentences with a possibility of parole after a total of twenty years.

{¶4} On May 17, 2011, appellant filed a motion to vacate a void judgment. He argued that a newly enacted statute on police procedures for line-ups was violated as no methods to avoid suggestiveness were implemented, such as a blind line-up where the administrator does not know which photograph is that of the suspect. Appellant attached a few pages of the transcript from the Columbiana County case. The first three pages contain the testimony of a sergeant who said that he showed the victim

the photo array on May 12, 2003, that a detective provided him with the photo array, that he did not know who appellant was when he showed the witness the array, and that the witness immediately pointed out appellant's picture. The last page was the testimony of a detective who said that the line-up had already been performed when he received the case on June 2.

{¶5} The state responded by pointing out that appellant never raised this issue in the trial court at the proper time and that he pled guilty and thus waived the issue. The state also argued that this was a double blind line-up as the sergeant who administered the line-up did not know appellant and did not create the array. Finally, the state urged that the motion was essentially a petition for post-conviction relief which failed to meet the test for untimely petitions.

{¶6} Appellant replied that the court was without jurisdiction so the judgment was void and the statute is new so he could not have raised the issue previously. He also attached a police report showing that the sergeant took a report from appellant about a visitation issue a few days before taking the report from the witness in this case. He believes this shows that the sergeant falsely testified that he did not recognize appellant while administering the array.

{¶7} On June 6, 2011, the trial court denied appellant's motion. The court found that appellant waived the issue by pleading guilty. The court held that even if he could raise the issue, it would not make the judgment void or eliminate the trial court's subject matter jurisdiction. The court concluded that the motion was a petition for post-conviction relief and that it did not meet the requirements for an untimely petition. Appellant filed a timely notice of appeal.

ASSIGNMENT OF ERROR

{¶8} The sole assignment of error set forth in appellant's *pro se* brief provides:

{¶9} "THE TRIAL COURT ERRED BY DISMISSING APPELLANTS VOID JUDGMENT UNDER SENATE BILL 77 ENACTMENT INCORPORATED IN R.C. § 2933.83 VIOLATING APPELLANTS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION."

{¶10} On July 6, 2010, a new statute on lineups went into effect. R.C. 2933.83(B). This statute provides: "Prior to conducting any live lineup or photo lineup on or after the effective date of this section, any law enforcement agency or criminal justice entity in this state that conducts live lineups or photo lineups shall adopt specific procedures for conducting the lineups." R.C. 2933.83(A).

{¶11} The statute then lists the minimum requirements to be contained within the adopted procedures. For instance, a blind or blinded administrator shall be used unless impracticable in which case the administrator shall state in writing the reason for that impracticability. R.C. 2933.83(B)(1)-(3). Moreover, the administrator shall keep a written record containing the results signed by the eyewitness, confidence statements of the witness, the names of all present, the date and time, any identification of a filler, the names of the fillers, and the sources of pictures. R.C. 2933.83(B)(4). In addition, if a blind administrator is conducting the lineup, the administrator shall inform the eyewitness that the suspect may or may not be in the lineup and that the administrator does not know who the suspect is. R.C. 2933.83(B)(5). The statute continues:

{¶12} "(C) For any photo lineup or live lineup that is administered on or after the effective date of this section, all of the following apply:

{¶13} "(1) Evidence of a failure to comply with any of the provisions of this section or with any procedure for conducting lineups that has been adopted by a law enforcement agency or criminal justice agency pursuant to division (B) of this section and that conforms to any provision of divisions (B)(1) to (5) of this section shall be considered by trial courts in adjudicating motions to suppress eyewitness identification resulting from or related to the lineup.

{¶14} "(2) Evidence of a failure to comply with any of the provisions of this section or with any procedure for conducting lineups that has been adopted by a law enforcement agency or criminal justice agency pursuant to division (B) of this section and that conforms to any provision of divisions (B)(1) to (5) of this section shall be admissible in support of any claim of eyewitness misidentification resulting from or related to the lineup as long as that evidence otherwise is admissible.

**{¶15}** "(3) When evidence of a failure to comply with any of the provisions of this section, or with any procedure for conducting lineups that has been adopted by a law enforcement agency or criminal justice agency pursuant to division (B) of this section and that conforms to any provision of divisions (B)(1) to (5) of this section, is presented at trial, the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup.

**{¶16}** "(D) The requirements in this section regarding the procedures for live lineups or photo lineups conducted by a law enforcement agency or criminal justice entity do not prohibit a law enforcement agency or criminal justice entity from adopting other scientifically accepted procedures for conducting live lineups or photo lineups that the scientific community considers more effective." R.C. 2933.83.

**{¶17}** Appellant claims that this statute was not followed. Appellant presented the sergeant's testimony from a trial in another county showing that the line-up was a blind line-up as he did not prepare the line-up and did not recognize anyone on the line-up and did not know which picture was appellant. Appellant believes this testimony is incorrect because he found an April 29, 2003 police report stating that the sergeant spoke to appellant "via public service" about a visitation transfer issue. Initially, we note that briefly speaking to a person "via public service" would not mean that the sergeant falsely testified that he did not recognize anyone in the line-up.

**{¶18}** Plus, contrary to appellant's suggestion, the statute does not provide for automatic exclusion of a line-up conducted in a manner different than that provided thereunder. For instance, it provides that the court hearing a suppression motion "shall consider" the failure to follow the statute and that evidence of a failure is admissible for a jury's consideration. *See* R.C. 2933.83(C). It does not void a line-up (or a subsequent conviction based upon a guilty plea for that matter).

**{¶19}** In any event, by its very terms, this statute, effective July 6, 2010, is not retroactive. Twice it states that it applies to lineups administered "on or after the effective date of this section." R.C. 2933.83(A), (C). Thus, it cannot be utilized by appellant to invalidate a 2003 line-up. *See State v. Humberto*, 10th Dist. No. 10AP-527, 2011-Ohio-3080, ¶ 50 (holding that R.C. 2933.83 does not control identifications

prior to its effective date); *State v. Smith*, 8th Dist. No. 95243, 2011-Ohio-3051, ¶ 43 (defendant's reliance on the procedures set forth in R.C. 2933.83 found to be misplaced as those provisions were not in effect when the police presented the photo array). *See also Jones v. Warden*, S.D. Ohio No. 1:09CV158, at *12 (2011).

{¶20} Moreover, as the state points out, appellant waived the general claims regarding the line-up because he did not file a pretrial motion to suppress the identification[1] or further object at trial. *See State v. Curtis*, 54 Ohio St.2d 128, 134-135, 375 N.E.2d 52 (1978). *See also State v. Andrews*, 12th Dist. No. CA2009-02-052, 2010-Ohio-108, ¶ 10. Indeed, he did not take his case to trial, where the line-up would have been subject to further scrutiny by the trier of fact.

{¶21} Rather, he pled *guilty*. A plea of guilty waives all non-jurisdictional errors that may have occurred during trial, unless such errors precluded the defendant from knowingly and voluntarily entering his guilty plea. *State v. Kelley*, 57 Ohio St.3d 127, 130, 566 N.E.2d 658 (1991); *Ross v. Common Pleas Ct. of Auglaize Cty.*, 30 Ohio St.2d 323, 323-324, 285 N.E.2d 25 (1972); *State v. Thigpen*, 7th Dist. No. 07MA186, 2008-Ohio-4818, ¶ 16 (appellant who pled guilty waived right to challenge suppression ruling). Appellant does not argue that his plea was not knowing and voluntary, and there is no indication that the information utilized here was not available at the time of the plea. Thus, appellant waived the issue in more than one way.

{¶22} As the state contends, an allegation concerning a line-up is not a subject matter jurisdiction issue. That is, an improper line-up can result in a voidable conviction, not a void one. A lack of jurisdiction that would make an order void is distinct from a lack of authority (sometimes also referred to as jurisdiction) to make an erroneous decision that would make an order voidable. *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 10-12, 34. The Supreme Court has explained that the word "jurisdiction" is sometimes used (or overused) to refer to a court's "jurisdiction" to hear a particular case and pointed out that this situation is more appropriately considered a lack of authority to rule on a certain matter or to proceed in

---

[1] Even if any line-up issues had been raised, the court could have properly used its discretion to find that the procedures were not unduly suggestive and the identification was reliable enough for submission to a jury. *See, e.g., State v. Gross*, 97 Ohio St.3d 121, 2002–Ohio–5524, 776 N.E.2d 1061, ¶ 19; *State v. Murphy*, 91 Ohio St.3d 516, 534, 747 N.E.2d 765 (2001); *State v. Waddy*, 63 Ohio St.3d 424, 439, 588 N.E.2d 819 (1992).

a certain manner rather than a lack of jurisdiction. *Id.* at ¶ 12, 19-21 (concluding that a failure to convene a three-judge panel in a death-penalty plea made a judgment voidable, not void, because the common pleas court had jurisdiction over an adult criminal cases). Whether the line-up was suggestive or not, the court had subject matter jurisdiction to hear this case. *See, e.g., State ex rel. Gains v. Go-Go Girls Caberet, Inc.*, 7th Dist. No. 09MA146, 2010-Ohio-870, ¶ 27-29 (common pleas judge had subject matter jurisdiction to issue search warrant even if contrary to procedure). Thus, appellant's argument regarding the line-up does not constitute a subject matter jurisdiction issue that can be raised at any time.

{¶23} Rather, appellant's motion is essentially seeking post-conviction relief, and the trial court properly treated it as such. *See State v. Reynolds*, 79 Ohio St.3d 158, 160, 679 N.E.2d 1131 (1997) (where a criminal defendant, subsequent to his direct appeal, files a motion on the basis that his constitutional rights have been violated, such a motion is a petition for post-conviction relief as defined in R.C. 2953.21 despite its caption). Nameless motions must be categorized in order for the court to determine the applicable test. *See State v. Bush*, 96 Ohio St.3d 235, 2002-Ohio-3993, 773 N.E.2d 522, ¶ 10-11 (but noting that the court cannot recast motion to withdraw guilty plea into post-conviction relief motion). As appellant's motion did not seek to withdraw his guilty plea, mention Crim.R. 32.1 or set forth any factors relevant to such a motion, *but appellant's motion specifically invoked R.C. 2953.23*, the post-conviction test was properly applied here. *See State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431, ¶ 12-13 (court may recast motion not named in the criminal justice system to a post-conviction relief petition).

{¶24} Appellant's petition was untimely filed under R.C. 2953.21(A), which provides that the petition shall be filed no later than one hundred eighty days after: the date on which the trial transcript is filed in the court of appeals in the direct appeal or the expiration of the time for filing the appeal. A court may not entertain appellant's untimely petition unless he showed: (1) that he was either unavoidably prevented from discovery of the relevant facts upon which the petitioner or that the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation and the petition asserts a claim based on that right,

and (2) there is clear and convincing evidence that, but for constitutional error at trial, no reasonable fact-finder would have found the petitioner guilty. R.C. 2953.23(A). (Or, an alternative regarding DNA testing, not applicable here).

{¶25} Appellant does not state how he was *or even that he was* unavoidably prevented from discovering that the line-up may have been suggestive. *See* R.C. 2953.23(A)(1)(a). In fact, the testimony he cites is from the case he took to trial in Columbiana County in 2004. Nor does he set forth a new retroactive right recognized by the United States Supreme Court. *Id.* Rather, as to both of these options, the right he relies upon is derived from a new Ohio statute that is not retroactive to the date of the photographic line-up involving appellant.

{¶26} As the trial court alternatively pointed out, appellant is not claiming an error occurred at trial because there was no trial. *See* R.C. 2953.23(A)(1)(b). Furthermore, the identification by the witness in the field in Columbiana County was a background issue when it came to the charges in this Carroll County Case. That witness was the impetus for the investigation, which led the police to *the victim*, who incriminated appellant in Carroll County. Where the child-victim then identified appellant (someone he knew well and called "Uncle") as the one who anally raped him in this case and made him perform fellatio in the Columbiana County case (where he testified), it cannot be said that but for the error, no reasonable fact-finder would have found him guilty in this case. This assignment of error is overruled.

{¶27} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
DeGenaro, J., concurs.