[Cite as *State v. Jackson*, 2014-Ohio-2249.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.   13 MA 121 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| BRANDON JACKSON, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:        Criminal Appeal from Common Pleas
                                 Court, Case No. 13CR193.


JUDGMENT:                        Affirmed.


APPEARANCES:
For Plaintiff-Appellee:          Attorney Paul Gains
                                 Prosecuting Attorney
                                 Attorney Ralph Rivera
                                 Assistant Prosecuting Attorney
                                 21 West Boardman Street, 6th Floor
                                 Youngstown, Ohio  44503


For Defendant-Appellant:         Attorney Donald Dixon
                                 Huntington Bank Building
                                 26 Market Street, Suite 610
                                 Youngstown, Ohio  44503


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite


                                 Dated:  May 22, 2014

VUKOVICH, J.

{¶1} Defendant-appellant Brandon Jackson appeals after being sentenced by the Mahoning County Common Pleas Court on various crimes in two separate cases. Appellant's main argument is that defense counsel rendered ineffective assistance of counsel in the first case by withdrawing a suppression motion. Appellant also sets forth an argument concerning the order in which his sentences will be served. For the following reasons, appellant's arguments are overruled, and the judgments of the trial court are affirmed.

STATEMENT OF THE CASE IN 13CR193

{¶2} A February 6, 2013 traffic stop in Youngstown resulted in the discovery of drugs and a gun in the vehicle appellant was driving. He was thereafter indicted for: (1) possession of heroin in an amount equal to more than ten (and less than fifty) grams, a second degree felony; (2) possession of cocaine in an amount equal to or more than five (and less than ten) grams, a fourth degree felony; (3) possession of cocaine in an amount less than five grams, a fifth degree felony; (4) improperly handling a firearm in a vehicle, a fourth degree felony; and (5) having a weapon while under a disability, a third degree felony.

{¶3} On March 19, 2013, appellant appeared at his arraignment with retained counsel. He attended a pretrial on April 3, where counsel advised the court that he would be filing a motion to suppress. The court set a suppression hearing for April 22 and ordered appellant to attend. The suppression motion was filed on April 18. The motion argued that there was no probable cause to stop the vehicle for an alleged lack of headlights because the sun set at 6:00 p.m. on the day of the stop and the stop occurred at 5:58 p.m. Yet, a traffic ticket was attached, which showed that appellant was cited for failing to use headlights in violation of R.C. 4513.03 and for failing to use a turn signal in violation of R.C. 4511.39.

{¶4} The motion alternatively argued that, prior to a canine sniff, appellant was detained for longer than the time needed to conduct a routine traffic stop. It was initially estimated that it took twenty to forty minutes for the canine unit from Boardman to arrive, but counsel noted that they were awaiting evidence on radio traffic times. It was also claimed that reasonable suspicion did not arise after the stop to support the

extended further detention to await the canine unit. On this topic, appellant urged that the following facts would not constitute reasonable suspicion for further detention: it was a high crime area, the defendant acted nervous, his car had air fresheners, and he refused to exit his vehicle and instead requested a supervisor.

{¶5} Appellant failed to appear for the suppression hearing. The case was then called the next day, where appellant did appear with his attorney. Both sides addressed the court regarding the suppression motion. The defense then orally moved to withdraw the motion.

{¶6} Appellant attended a May 8 pretrial, after which the case remained set for trial. Then, on May 9, 2013, appellant pled guilty as charged. At a later sentencing hearing, the state recommended a maximum sentence of eight years on the heroin offense and concurrent sentences of twelve months on the other offenses. In a July 25, 2013 entry, the court sentenced appellant accordingly after merging the two offenses. The total sentence in that case was thus eight years.

STATEMENT OF THE CASE IN 13CR271A

{¶7} On March 3, 2013, while appellant was out on bail in the above case, he committed more offenses after an argument in a bar. It was alleged that he left the bar and went to a car to retrieve a handgun which he fired into the air. His companion, Sergio Gonzalez, drove to appellant's house where appellant retrieved a MAK-90 assault rifle, and they then went looking for the people with whom they had argued. As they neared a vehicle containing three occupants, appellant fired the assault rifle in the air and told Gonzalez to drive them off the road. When the other vehicle was forced to a stop, appellant then approached it with the rifle in his hand, opened the door, and realized that he had the wrong vehicle. Upon recognizing a female in the backseat, he allegedly threatened to harm her if she identified him. In the meantime, a bystander had stopped to help. Gonzalez hit him with the handgun and stole his car. The police followed Gonzalez to a home where he was arrested. He later agreed to testify against appellant.

{¶8} Appellant was indicted for various offenses on April 4, 2013. He appeared at his April 16 arraignment with retained counsel and his bond (involving electronic monitoring house arrest) was allowed to continue. On May 23, 2013,

appellant pled guilty to three counts of felonious assault, two counts of having a weapon while under a disability, and intimidation with a firearm specification. The sentencing hearing for this case was held at the same time as the sentencing hearing in 13CR193.

{¶9} After announcing the sentence in 13CR193, the court sentenced appellant in 13CR271A to three years on the firearm specification plus concurrent sentences of seven years for each felonious assault and thirty-six months each for the intimidation and the two weapon under disability offenses, for a total of ten years (as recommended by the state). The court ordered the ten year sentence in 13CR271A to be served consecutively to the eight year sentence imposed in 13CR193, and the July 25, 2013 sentencing entry in 13CR271A reflected this ruling. Appellant filed a timely notice of appeal relating to the entries in both cases.

ASSIGNMENT OF ERROR NUMBER ONE

{¶10} Appellant sets forth two assignments of error, the first of which contends:

{¶11} "TRIAL COUNSEL'S UNILATERAL WITHDRAWAL OF MOTION TO SUPPRESS CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL."

{¶12} We review a claim of ineffective assistance of counsel under the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104, S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and he can show that prejudice arose from the lawyer's deficient performance. *State v. Bradley*, 42 Ohio St.3d 136, 142-143, 538 N.E.2d 373 (1989). Our review of counsel's performance is highly deferential as there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Debatable strategy very rarely constitutes ineffective assistance of counsel. *See State v. Thompson*, 33 Ohio St.3d 1, 10, 514 N.E.2d 407 (1987).

{¶13} And, to show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). Prejudice from defective representation justifies reversal only where the results were

unreliable or the proceeding fundamentally unfair due to the performance of trial counsel. *Id.*, citing *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 842-843, 122 L.Ed.2d 180, 189-191 (1993). We also note that where a defendant claims that a plea is involuntary due to counsel's erroneous advice, he must prove that there is a reasonable probability that, but for counsel's errors, she would not have pled guilty. *See Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

**{¶14}** Appellant argues that defense counsel rendered deficient performance by withdrawing the suppression motion because the suppression motion demonstrated a clear constitutional violation by police. He generally asserts that but for the error, the result would have been different and points to the seriousness of the eight year sentence on the heroin offense. Appellant concludes that his sentence should be vacated and the case should be remanded to the trial court for further proceedings on the suppression motion. There are various problems with his arguments.

**{¶15}** Initially, we turn to the matter of waiver by way of the guilty plea. "The plea of no contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion, including a pretrial motion to suppress evidence." Crim.R. 12(I). There is not a similar rule for guilty pleas. Rather, a guilty plea represents a "break in the chain of events" that occurred previously in the case. *State v. Spates*, 64 Ohio St.3d 269, 272, 595 N.E.2d 351 (1992). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* (he may only attack the plea itself by showing that the advice he received from counsel was not within the standards).

**{¶16}** Therefore, assignments of error on pretrial motion practice are precluded after a guilty plea unless the defendant asserts a jurisdictional defect, raises the constitutionality of the statute defining the offense, or implicates the voluntary, knowing, or intelligent character of the plea. *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 77-79. *See also State v. Kelley*, 57 Ohio St.3d 127, 130, 566 N.E.2d 658 (1991) (speedy trial issue waived by guilty plea and errors occurring at trial waived by plea after trial but before sentence); *Ross v. Common*

*Pleas Ct. of Auglaize Cty.*, 30 Ohio St.2d 323, 323-324, 285 N.E.2d 25 (1972) (a defendant represented by competent counsel who enters a voluntary guilty plea waives all nonjurisdictional defects in prior proceedings including speedy trial).

{¶17} Specifically then, a defendant who pleads guilty generally waives the right to make allegations of ineffective assistance of counsel at the suppression hearing or for failure to move for suppression unless he alleges that the error caused the plea to be less than knowing, voluntary, and intelligent. *See State v. Parks*, 7th Dist. No. 11CA873, 2012-Ohio-3011, ¶ 21 (failure to seek suppression waived by guilty plea where he does not argue the plea was unknowing, etc.); *State v. Mack*, 7th Dist. No. 11MA41, 2011-Ohio-6409, ¶ 13 (a guilty plea waives any alleged error that occurred in the prior suppression ruling); *State v. Thigpen*, 7th Dist. No. 07MA186, 2008-Ohio-4818, ¶ 14, 16 (it is beyond dispute that a guilty plea waives the right to challenge nonjurisdictional items occurring prior to the plea such as a suppression ruling unless a voluntary plea was precluded).

{¶18} Here, appellant does not assert that his plea was not knowing, voluntary, or intelligent. *See State v. Kitzler*, 3d Dist. No. 16-02-06, 2002-Ohio-5253, ¶ 11 (where appellant claimed counsel was ineffective for failing to file suppression motion and did not allege that plea lacked the required characteristics, appellate court refused to address assignment of error). And, he cites to no issues with his Crim.R. 11 hearing, which is the focus of the inquiry. *See Spates*, 64 Ohio St.3d at 272-273 (stating that defendant's guilty plea waived issue with denial of counsel at preliminary hearing, emphasizing that the crucial inquiry becomes whether the defendant's plea was a knowing, intelligent, and voluntary waiver of his right to counsel at the preliminary hearing, and then reviewing the plea hearing for compliance with Crim.R.11).

{¶19} Regardless, any support for such an argument appears to be initially based upon appellant's claim that trial counsel never had the chance to tell him that his suppression motion had been withdrawn or to talk about it prior to the plea. The record does not support this contention. Contrary to appellant's suggestion, counsel did not withdraw the suppression motion on the day of the originally scheduled suppression hearing, the one where appellant failed to appear. Rather, a hearing was held the next day, April 23, 2013. Both sides discussed the motion with the court, and

the defense then orally moved to withdraw the motion. Appellant was present at that hearing with his retained attorney. Appellant was also present for a further pretrial on May 8. And, he appeared again on May 9 to plead guilty, two weeks after the withdrawal of the suppression motion.

{¶20} In any event, appellant's brief acknowledges, "[t]he record is silent as to whether or not Appellant ever talked to his trial counsel about withdrawing said motion to suppress." (Appellant's Brief at 3). Appellant cannot claim for the first time on direct appeal of his conviction that his plea was uninformed due to an alleged lack of discussion on withdrawing the suppression motion as this is an allusion to an allegation of fact outside of the record. Items outside the record (such as a suggestion that counsel did not have a certain discussion) are not properly reviewed on direct appeal. *See State v. Ishmail*, 54 Ohio St.2d 402, 405-406, 377 N.E.2d 500 (1978) (a claim on appeal that concerns items outside of the record cannot be addressed on appeal). Thus, the assertion that there was ineffective assistance due to a "unilateral" withdrawal of the suppression motion is not supportable on appeal.

{¶21} Furthermore, appellant describes the withdrawal of the suppression motion as "unexplainable." His brief suggests that there may have been some failed tactic in trying to enter a plea deal in the two cases. Although the state ended up recommending that the two cases run consecutively and sought a maximum sentence on the heroin offense, counsel may have strategized or outright bargained that proceeding with what became viewed as weak arguments on suppression could result in a state's recommendation to run even more sentences consecutively, especially in the shooting case (where the state did not recommend a maximum or consecutive sentence). In fact, as to the state's recommendations, the court opined that it was "fairly generous" and noted, "Trust me, that's a gift because I don't normally sentence concurrent." (Sent. Tr. 35, 40).

{¶22} We also note that some reasons for withdrawal of the motion were explained at sentencing (for another purpose). For instance, the first allegation in the suppression motion was the lack of justification for a traffic stop, mentioning only a lack of headlights, asserting a factual argument as to the time of the stop (which counsel would be checking by radio traffic records), and pointing out that the claimed

time was two minutes prior to the recorded sunset for that day. Defense counsel thereafter received the radio traffic records *and additionally recognized that a lack of a turn signal also precipitated the traffic stop.* (Sent Tr. 16).

{¶23} On this topic, appellant's brief states: "In Appellant's case, the initial stop was for headlights and turn signal, which he was never cited for." (Appellant's Brief at 6). However, appellant was in fact cited for failing to use headlights in violation of R.C. 4513.03 and a failure to use a turn signal in violation of R.C. 4511.39. That traffic citation was attached to appellant's suppression motion. Upon acknowledging the additional or overlooked information, trial counsel could conscientiously withdraw this suppression argument regarding the initial traffic stop.

{¶24} As for the second argument in the suppression motion, it was essentially acknowledged that the case law permits canine sniffs of vehicles stopped for traffic violations and that an alert from a dog allows the search. Specifically, the motion acknowledged that nothing besides a proper traffic stop is required if the period of the detention is no longer than that usual for a routine ticket, including the running of the license plates, the license, etc. The motion stated that if the time period is extended beyond that of a routine stop, then new reasonable suspicion must exist to justify waiting for the canine unit. The existence of such case law was recognized by the trial court and defense counsel below and cited in both parties' briefs on appeal.

{¶25} In *Caballes*, the traffic stop lasted ten minutes, and the state court factually found that the detention for the traffic ticket was not improperly extended. *Illinois v. Caballes*, 543 U.S. 405, 408-409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). The Illinois Supreme Court concluded that additional reasonable suspicion is needed not just for prolonged detentions but for any use of a drug dog during a traffic stop. *Id.* at 408. The United States Supreme Court found that the state courts had carefully reviewed the details of the officer's process and the precise timing of radio dispatches to determine that the stop was not improperly extended to await the dog, and the Court accepted that "the duration of the stop was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop." *Id.* The Court then reversed the Illinois Supreme Court's decision and held that a drug dog can be implemented during a valid traffic stop without the need for new reasonable suspicion of criminal activity. *Id.* 408-

410.  *See also State v. Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12, 14; *State v. Robinett*e, 80 Ohio St.3d 234, 239, 685 N.E.2d 762 (1997) (officer can request consent to search during the time reasonably necessary to process the citation)

**{¶26}**  In this court's *Elliott* case, the officer asked for a canine unit and learned 36 minutes after the initial stop that the canine unit would not be arriving, at which time he decided to conduct field sobriety tests.  We recited the above law that reasonable suspicion to conduct the canine sniff is not required if the traffic stop is not improperly prolonged.  *State v. Elliott*, 7th Dist. No. 11MA182, 2012-Ohio-3350, ¶ 23, citing various appellate cases.  After evaluating the officer's testimony and the duration of the initial detention, we ordered suppression due to an unreasonably prolonged stop by the time the officer conducted the field sobriety tests, noting that if the officer truly believed the driver was impaired, he would have conducted field sobriety tests while he waited.  *Id.* at ¶ 26, 30 (stating that a lawful initial stop will not support such a fishing expedition).

**{¶27}** Appellant asserts that the canine request here was a similar "fishing expedition."   Notably, the suppression motion here was based upon appellant's original estimate that the police waited 20-40 minutes for the canine unit.  The motion specifically advised that the defense was awaiting a radio traffic request to further elucidate the timing issues.  As counsel later pointed out, he learned that the time spent waiting on the canine unit was *only ten minutes*.  (Sent.Tr. 16-17).

**{¶28}** Thus, the "time for ticketing" part of the test employed upon a canine sniff was judged acceptable by counsel, making the next step (involving reasonable suspicion for extended detention after an initial stop) irrelevant.  Plus, there are no facts in the record specifically showing that what occurred during the relevant initial time period to support an argument that it was improperly prolonged and thus there is no reasonable probability of different results.

**{¶29}** Appellant makes note of the trial court's seemingly negative expressions concerning the use of a drug dog, suggesting that the court would have granted suppression had the motion proceeded to judgment.  However, the trial judge was expressing his personal opinion on certain case law and practices.  It was clear that

the court and defense counsel were in agreement that the law allowed for the calling of a dog at a traffic stop and that ten minutes was within the range of an acceptable detention for a traffic stop (and thus the second aspect of test, after a detention becomes extended, would not be implicated).[1] (Tr. 16-18, 35).

**{¶30}** Finally, appellant does not explain how any delay would be attributable to officers where appellant refused to step out of his car during the stop and where he insisted on waiting for a sergeant to be called to the scene. An officer can ask a motorist stopped for a traffic violation to exit the vehicle. *Arizona v. Johnson*, 555 U.S. 323, 129 S.Ct. 781, 786, 172 L.Ed.2d 694 (2009); *State v. Robinett*e, 80 Ohio St.3d 234, 239, 685 N.E.2d 762 (1997) (and officer can request consent to search during the time reasonably necessary to process the citation), citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), fn. 6. And, contrary to appellant's suggestion, an officer's subjective motivation is irrelevant. *See Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 6, 665 N.E.2d 1091 (1996). *See also Robinett*e, 80 Ohio St.3d at 239-240.

**{¶31}** In conclusion, the arguments on appeal in juxtaposition to the explanations in the record do not support a finding of a serious error in withdrawing the motion or a reasonable probability that the result of the proceedings would have changed had the motion not been withdrawn. In any event, appellant pled guilty and there are no indications that his guilty plea lacked the characteristics of a voluntary, intelligent, and knowing plea. For all of these reasons, this assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER TWO

---

[1] Appellant attached a police report to his brief. As the state points out, this was not part of the record below and thus cannot be utilized in the direct appeal. *See Ishmail*, 54 Ohio St.2d at 405-406 (a claim on appeal that concerns items outside of the record cannot be addressed on appeal); *State v. Klempa*, 7th Dist. No. 01BA63, 2003-Ohio-3482, ¶ 11 (exhibits attached to a brief that are not part of the record cannot be considered on appeal). We also note that said report provides further support for the stop (lights and turn signal) and does not show that delay by the police extended the detention beyond a typical traffic ticket in order to conduct the canine sniff. Appellant's intent was apparently to show that the report does not show reasonable suspicion for an extended detention: nervous and stuttering in providing documentation, presence of multiple air fresheners, multiple drug arrests in area, refusal to exit car, and requesting supervisor. As aforementioned, the extended detention test need not be reached.

{¶32} Appellant's second assignment of error contends:

{¶33} "THE TRIAL COURT ERRED IN NOT INFORMING APPELLANT OF WHICH SENTENCE HE MUST SERVE FIRST."

{¶34} As aforementioned, the sentencing hearing on the two separate cases was conducted at the same time. The court released separate judgment entries on the same day memorializing the sentences. In 13CR193, the court sentenced appellant to eight years for possession of heroin with concurrent twelve month sentencing on three other offenses for a total of eight years. The court stated that the eight year sentence for the second-degree felony involving heroin was a mandatory prison term. *See* R.C. 2925.11(C)(6)(d); R.C. 2929.01(X)(1); R.C. 2929.13(F)(5); R.C. 2929.14(B).

{¶35} In 13CR271A, the court sentenced appellant to seven years for each of three felonious assaults and thirty-six months each for the intimidation and the two weapons offenses, all to run concurrent plus a three year firearm specification to be served prior and consecutively to the underlying felony of intimidation. In 13CR271A, the court ordered the ten year sentence to be served consecutively to the eight year sentence imposed in 13CR193. *See* R.C. 2929.41(A); R.C. 2929.14(C)(4) (requirements for imposing consecutive service of prison terms).

{¶36} Appellant believes that it is not clear which sentence is to be served first, stating that the cases were run consecutively and they contain a combination of mandatory and non-mandatory terms. He contends that the court's failure to specifically explain to him the order of sentence service is an error and asks for a remand to the trial court for clarification. In support, he states merely: "When imposing sentences on two separate cases, it is now necessary for the trial court to inform a Defendant of which sentences are to be served first." He cites, without reviewing, *Cvijetinovic* from the Eighth District and *Broughton* from the Sixth District.

{¶37} In *Broughton*, the court imposed a one year sentence in the case with the lower case number and a six-month mandatory sentence in the next successively-numbered case. Each sentence was ordered to run consecutively to the other sentence. Appellant was later granted judicial release and placed on community control, which he then violated. In reimposing the original sentences, the trial court

credited the defendant with 212 days on the one year sentence and 37 days on the mandatory six-month sentence. The Sixth District stated that because it is unclear from the judgment entries which sentence was to be served first, the ambiguity would be construed in favor of the defendant. *State v. Broughton*, 6th Dist. Nos. L-0601213, L-06-1214, 2007-Ohio-5312 ¶ 12, 14. The court thus ordered that credit for time served would be applied to the mandatory six month sentence first (so that sentence was complete). *Id.* at ¶ 15.

**{¶38}** In *Cvijetinovic*, the trial court sentenced a defendant in 1999 (with resentencing in 2003) in three separate cases: Case 1: four years (consecutive to case 3 and concurrent to case 2); Case 2: one year gun specification plus six years (and another six years concurrent) for a total of seven years; and Case 3: three year gun specification plus nine years (and another nine years concurrent) for a total of twelve years (consecutive to case 1). In 2011, the trial court was notified that it did not include post-release control in the sentence, and a hearing was then held.

**{¶39}** The defendant urged that he already served the twelve year sentence in the third case (which would have contained a five year term of post-release control) and that he was now serving the four year sentence in the first case (which would only contain a three year term of post-release control). The trial court disagreed and stated that the sentences are to be served in the order of the sequential case numbers and thus imposed five years of post-release control. Rather than appeal, the defendant filed a motion to vacate post-release control in the trial court; this motion was denied, and the denial was appealed. The Eighth District in the cited *Cvijetinovic* case thus had to determine whether the trial court imposed post-release control on an offense after the defendant completed his prison term for that offense, making the term of post-release control void. *State v. Cvijetinovic*, 8th Dist. No. 99316, 2013-Ohio-5121, ¶ 14, 18.

**{¶40}** The Eighth District stated that there was no authority for the statement that the lowest case number must be served first. *Id.* at ¶ 21. "Rather, it is axiomatic that a trial court speaks only through its journal; thus, the sentencing journal entries should dictate how sentences are served." *Id.* The court then found that the entries in the first and third cases were in conflict as each stated that the sentence would be

served consecutively to the other. *Id.* at ¶ 22-24, citing *Broughton*, 6th Dist. Nos. L-0601213, L-06-1214. As the order in which the sentences were to be served was ambiguous, they were construed in favor of the defendant. *Id.* at ¶ 25.

**{¶41}** The *Cvijetinovic* court concluded that the twelve year sentence in the third case was served first and thus completed by the time the court imposed post-release control in 2011. *Id.* Thus, the imposition of five years of post-release control was reversed, and the case was remanded to determine the appropriate terms of post-release control, if any, on the other cases. *Id.* at ¶ 26. *See also* id. at ¶ 3 (ordering the imposition of three years of post-release control on the first case).

**{¶42}** Unlike the *Cvijetinovic* and *Broughton* cases, the trial court here did not order that each case will run consecutive to the other case. That is, the trial court *only* mentioned consecutive service in the entry for 13CR271A, where the court ordered that said case would be served consecutively to the sentence imposed by the court in the 13CR193 case. The 13CR193 entry does not contain reciprocal language. Thus, the specific ambiguity or conflict expressed in those cases is not present here.

**{¶43}** In any event, for purposes of the direct appeal of the sentence, the required content of a sentencing entry, is governed by statute, rule, or case law interpreting a statute or rule, not by an appellate court's concern about the future potentialities. In fact, the cases cited by appellant do not support his claim that a sentencing entry is reversible if it does not specifically explain the order of service. Read in context, the statement in *Cvijetinovic* that "the sentencing journal entries should dictate how sentences are served" just means that, if an issue arises later, the court will read the entries themselves and will not utilize other material or mere case numbers, to determine the order of sentences. It does not stand for the proposition that all sentencing entries imposing consecutive sentences must contain a statement regarding the sequence of the sentences or they are reversible.

**{¶44}** Thus, appellant provides no support for his argument that a sentencing court commits reversible error by not expressly providing the order of consecutive sentences. As the state points out, there are statutes that refer to the order of sentences, and there are other statutes and rules that apply depending upon what procedure is being employed in a particular case, none of which are reviewed by

appellant here. *See, e.g.,* R.C. 2929.14(C)(1)(a); R.C. 2929.20(C)(1)-(4); R.C. 2967.19(C)(1). *See also* Ohio Adm. Code, 5120-2-.03.1(I). The two cases appellant relies upon dealt with issues that arose later, upon a trial court's construction of sentencing time where such construction actually affected the defendant.

**{¶45}** Whether an issue will actually arise in appellant's case is mere conjecture that is not even theorized by appellant. There are no concerns as to any discernible issues raised here. We cannot make predictions on the assorted latent issues that may or may not arise under various statutes that may or may not affect appellant in the future. This argument is therefore overruled.

**{¶46}** For the foregoing reasons, appellant's assignments of error are overruled, and the judgments of the trial court are hereby affirmed.

Donofrio, J., concurs.
Waite, J., concurs.